742 A.2d 572 (1999)
326 N.J. Super. 572
Cletis MILLER, Individually and as Executor under the Last Will and Testament of Ann T. Miller, Deceased, Plaintiff-Appellant,
v.
ESTATE of Walter SPERLING, Coletta Sperling, Executrix, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued November 15, 1999.
Decided December 23, 1999.
*573 Willard E. Byer, Jr., for plaintiff-appellant; Cletis Miller, pro se.
Michael J. Lunga, Lunga, Evers & Johnson, Fairfield, for defendant-respondent, John J. Abromitis, on the brief.
Before Judges PETRELLA, BRAITHWAITE [1] and COBURN.
PETRELLA, P.J.A.D.
Plaintiff Cletis Miller, on behalf of himself and the estate of his deceased wife, Ann T. Miller, appeals from a summary judgment dismissing his pro se complaint against the estate of Walter Sperling that alleged that Sperling, Ann Miller's doctor since the 1970's, participated in a conspiracy with his wife's then family[2] to put his wife on birth control pills.
The Millers were married in 1972. At that time Ann Miller was forty years of age. Plaintiff alleges that commencing in 1972, Doctor Sperling prescribed Ovulen 28 to his wife, telling her it was a medication for her nerves rather than a birth control medication. Plaintiff also asserts that in connection with a 1985 physical examination of Ann Miller, Dr. Sperling admitted that he had prescribed the birth control medication at the urging of decedent's family as they were concerned that decedent would not be capable of raising children.
No litigation was instituted for malpractice or any other claim prior to Ann Miller's death, although in 1985 he and his wife sought, but were unable to procure, legal assistance to bring a claim against
*574 Dr. Sperling, a pharmacist and a bank on the basis that he and his wife were denied the right to have children. Plaintiff claims he only became aware that Ovulen 28 could cause heart attacks and strokes, particularly in older women, after his wife had died from "suspected acute myocardial infarction"[3] on March 30, 1996, at the age of sixty-five.
Plaintiff filed his pro se complaint on March 17, 1998, on various theories including a claim that Dr. Sperling's prescription of Ovulen 28 from 1972 until allegedly 1985 was a proximate cause of his wife's death. Plaintiff asserts without supporting documentation, that Ovulen 28 was taken off the market at some unspecified date, allegedly due to its serious side effects. However, no expert report or any evidence to support his claims was ever submitted to the motion judge. In addition, there is no record of any prescription written by Dr. Sperling for Ovulen 28 after 1980, although the record contains thirteen pages of prescription records showing numerous different prescriptions from 1978 through 1996 that were written for the Millers (a few were for their pet).[4] There is no record of any prescription for "Ovulen 28" after 1980. Plaintiff has nonetheless asserted that his wife somehow continued to obtain prescription renewals and take Ovulen 28 until 1985, thinking it was a tranquilizer.
Defendant contended in the motion for summary judgment, that the two year statute of limitations, N.J.S.A. 2A:14-2, barred plaintiff's claims. The estate asserts that plaintiff and his wife knew (or should have known) they had a cause of action for medical malpractice in 1985 when Dr. Sperling allegedly admitted prescribing Ovulen 28 for birth control and that the failure of the Millers to act between that time and the next two years bars the claim. Defendant adds that summary judgment was properly granted, even though plaintiff did not have Dr. Sperling's medical records for the deceased. There were no records available because Dr. Sperling had retired in March 1985, and sold his practice (apparently including his medical records). Sperling died in 1997. Defendant also argues that the estate was entitled to judgment because plaintiff failed to obtain an expert report establishing a causal link between Dr. Sperling's pre-1985 prescription of Ovulen 28 and the 1996 death of plaintiff's wife, and that plaintiff failed to submit an affidavit of merit as required by N.J.S.A. 2A:53A-26 et seq.
In granting defendant summary judgment, the motion judge applied the discovery rule and noted that the time of accrual of the cause of action is decided by the Court under Lopez v. Swyer, 62 N.J. 267, 300 A.2d 563 (1973). The judge held that plaintiff knew or should have known of a cause of action against Dr. Sperling in 1985 when he learned that Ovulen 28 was a birth control drug and that the statute of limitations (N.J.S.A. 2A:14-2) barred the action.
On appeal, plaintiff claims that the statute of limitations should not have run because he did not discover that Ovulen 28 was a possible cause of his wife's death and the basis for a legal action until his wife's death. He also argues, for the first time on appeal, applicability of the wrongful death statute and its separate statute of limitations.[5]
I.
On a summary judgment motion, plaintiff (as the party here who opposed the *575 motion) is given the benefit of the reasonable inferences the facts will support. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 666 A.2d 146 (1995); Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 110 A.2d 24 (1954). An opposing party who offers no substantial or material facts in opposition to the motion cannot complain if the court takes as true the uncontradicted facts in the movant's papers. Id. at 75, 110 A.2d 24; R. 4:46-5. Disputed issues that are "of an unsubstantial nature" cannot overcome a motion for summary judgment. Brill, supra (142 N.J. at 530, 666 A.2d 146). Of course, mere speculation is not taken into account. See Rooney v. Township of West Orange, 200 N.J.Super. 201, 205, 491 A.2d 23 (App. Div.1985); Exxon Corp. v. Wagner, 154 N.J.Super. 538, 547, 382 A.2d 45 (App.Div. 1977).
We initially consider Miller's individual claim of malpractice. In some situations, including medical malpractice cases, it is sometimes difficult to know when a cause of action accrues. The "discovery rule" has been fashioned to alleviate the hardship that could be caused by a strict application of the statute of limitations. The seminal case applying the discovery rule is Lopez v. Swyer, supra (62 N.J. 267, 300 A.2d 563), where it was determined that the statute of limitation does not start to run "until the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim." Id. at 272, 300 A.2d 563. The statute will not run where the injured party is unaware that he or she has been injured, or in cases where the injury is known, the person does not know that the injury is attributable to another. Baird v. American Med. Optics, 155 N.J. 54, 66, 713 A.2d 1019 (1998); Tevis v. Tevis, 79 N.J. 422, 431-432, 400 A.2d 1189 (1979).
Plaintiff's individual claims of negligence, based on the claimed admission of Dr. Sperling in 1985 that he "wrongfully prescribed" medication for plaintiff's wife are clearly time barred.
In the case before us, plaintiff claims that Dr. Sperling wrongly prescribed birth control medication to his wife from 1972 until 1985. This knowledge must have alerted plaintiff and his wife to the fact that they may have had a cause of action against the doctor. Furthermore, reasonable investigation at that time most likely could have revealed that the drug prescribed, Ovulen 28, was dangerous. If in fact it was, plaintiff has not supplied the court with any evidence of this aside from his own allegations.
The grounds for a malpractice action were discovered in 1985; Mrs. Miller died in 1996. Since a malpractice action must be brought within two years of its accrual, N.J.S.A. 2A:14-2, principles of repose would be severely compromised and the defendant in this case would be prejudiced by permitting the medical malpractice action to proceed. Therefore, plaintiff's individual claims are not timely.
At oral argument of this appeal Miller, for the first time, urged the applicability of the two year statute of limitations under the wrongful death statute, N.J.S.A. 2A:31-1 et seq. and stated that the wrong statute (N.J.S.A. 2A:14-2) was previously cited in the briefs. N.J.S.A. 2A:31-3 states:
Every action brought under this chapter shall be commenced within 2 years after the death of the decedent, and not thereafter.
We could disregard this argument because it was not raised below. See Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234, 300 A.2d 142 (1973). However, because paragraph 11 of the complaint asserted a potential claim under the wrongful death act,[6] in the interest of justice we will consider the issue.
*576 The trial judge did not err by granting summary judgment, even considering the complaint to have asserted a wrongful death claim, because even though such a claim did not ripen or "accrue" until plaintiff's wife died,[7] see Duffy v. Ackerhalt, 138 N.J.Super. 119, 350 A.2d 283 (App.Div.1975), certif. denied, 70 N.J. 273, 359 A.2d 485 (1976), decedent's failure to bring a personal injury action before the statute of limitation expired barred the action due to the death claim's derivative nature. Knabe v. Hudson Bus Transp. Co, 111 N.J.L. 333, 168 A. 418 (E. & A.1933). The discovery rule is grounded in the concept of equity not only to the injured party, but also equity to the alleged wrongdoer. In the case on appeal, this notion of equity as applied in Duffy would not be advanced by permitting the malpractice suit to proceed.
Even though an out of time malpractice claim was permitted when an almost contemporaneous wrongful death action was considered timely under its statute of limitations in Duffy v. Ackerhalt, supra (138 N.J.Super. 119, 350 A.2d 283), that case is distinguishable. In Duffy, the plaintiff filed the two claims on the same day. The wrongful death claim was considered timely, but the medical malpractice claim was brought several days beyond the two year statute of limitations. Aside from potential application of the discovery rule, under those circumstances we deemed the defendant not prejudiced by defending the two suits where both actions arose from the same operative facts; defendant would have to defend against the wrongful death action based on the same alleged act of malpractice; death had occurred relatively recently after the alleged malpractice; the malpractice suit was filed within a few days after the statute of limitations had run; and the brief delay in filing was not intentional. Id. at 123-124, 350 A.2d 283.
Reading the complaint in this case liberally in plaintiff's favor, it could be considered as asserting one cause of action for malpractice in paragraph 9, and another cause of action for wrongful death in paragraph 11. The basis for the malpractice claim is that had decedent known the purpose of the Ovulen 28 medication she would not have taken it because she and her husband planned to have children. Thus, the complaint could be read as asserting that the doctor was negligent in prescribing the drug for her nerves and not telling her that it was a birth control pill that would prevent her from having children.
In his presentation to the motion judge, plaintiff described the situation in 1985 where he first learned that his wife was taking the pill when Dr. Sperling told them that Ovulen 28 was not a tranquilizer, but a birth control pill. Hence, giving plaintiffs the benefit of the inferences, at that point in 1985, plaintiff and his wife had a cause of action against Dr. Sperling for keeping her from having children and that is what the complaint pleads. As such, plaintiff's malpractice claim is time barred.
II.
Turning now to the wrongful death claim, the precise issue of whether the expiration of the statute of limitations for an underlying claim, where no tort action was instituted or resolved during the decedent's lifetime, bars a wrongful death action, has not been decided by our Supreme Court, but it was decided by its predecessor court, the Court of Errors and Appeals. See Knabe v. Hudson Bus Transp. Co., supra (111 N.J.L. 333, 168 A. 418).
*577 Thus, we are bound by Knabe v. Hudson Bus Transp. Co., supra (111 N.J.L. 333, 168 A. 418), because the Court of Errors and Appeals was then the highest court in this State. Hutchinson v. Atlantic City Med. Center-Mainland, 314 N.J.Super. 468, 478, 715 A.2d 348 (App.Div.1998); Jackson v. Hankinson, 94 N.J.Super. 505, 515, 229 A.2d 267 (App.Div.1967), aff'd, 51 N.J. 230, 238 A.2d 685 (1968). As an intermediate appellate court, it is not our function to overrule settled law. Miller v. Estate of Kahn, 140 N.J.Super. 177, 182-183, 355 A.2d 702 (App.Div.1976); State v. Hill, 139 N.J.Super. 548, 551, 354 A.2d 670 (App.Div.1976).
Knabe recognized that wrongful death actions are wholly derivative from an underlying personal injury action. 111 N.J.L. at 333, 168 A. 418; Alfone v. Sarno, 87 N.J. 99, 105, 432 A.2d 857 (1981). While cases such as Lawlor v. Cloverleaf Mem. Park, Inc., 56 N.J. 326, 266 A.2d 569 (1970) and Alfone v. Sarno dealt with issues tangential to the essential premise of the Knabe decision, those cases do not govern the situation before us. This court is still bound by Knabe because those cases address different issues from that in the present case and do not clearly undermine the authority of Knabe. See Burrell v. Quaranta, 259 N.J.Super. 243, 252, 612 A.2d 379 (App.Div.1992). The fundamental rule of Knabe remains intact as the law today in cases where no action was brought by the deceased while alive or where there was no judgment during decedent's lifetime. In our view, Knabe presents a sensible rule which has withstood the test of time.
A reading of Alfone v. Sarno, supra (87 N.J. at 105-106, 432 A.2d 857), makes clear that the precise issue before us with respect to the claim of a decedent being barred by the running of the wrongful death statute of limitations has not been addressed by our highest court since Knabe.[8] Alfone involved an issue of preclusion where an injured party had brought a lawsuit during her lifetime and recovered a monetary judgment. That judgment on liability was held binding as res judicata on liability in a wrongful death action filed three years after the death of the successful plaintiff. Alfone only addressed issue preclusion questions where litigation during the lifetime of the injured party resulted in judgment for either the plaintiff or the defendant or a settlement of the claim, and then established limitations on potential damages in any wrongful death action. Alfone was narrowly decided on res judicata and issue preclusion grounds; there had already been a judgment in favor of the injured party, thus the issue of liability would not be relitigated after memories had faded and evidence compromised. Recovery in the wrongful death action was limited to those amounts that were not or could not have been recovered in the original action.
We do not consider that a determination of fault prior to death should yield the same result as the loss of a claim where a potential tort claimant allows the statute of limitations to run. Here, plaintiff knew that he and his wife had a cause of action, *578 although couched in terms of preventing child birth. However, even if they did not know the full extent of the claim, they did not institute any litigation. Hence, usual principles of repose barred their claim. Plaintiff's non-action in such a situation (no assertion of a prior claim and resolution thereof) bars the wrongful death action because the underlying cause of action was lost by him and the decedent two years after the discovery of the claim in 1985. That the extent of the injuries may not have been known in 1985 does not affect the applicability of established case law. Knabe v. Hudson Bus Transportation Co., supra (111 N.J.L. 333, 168 A. 418); Lawlor v. Cloverleaf Memorial Park, Inc., supra (56 N.J. at 343-345, 266 A.2d 569) (prior cases characterizing wrongful death actions as wholly derivative were questioned but not decided); Coulter v. New Jersey Pulverizing Co., 11 N.J.Misc. 5, 163 A. 661 (Sup.Ct.1932).
Our decision in this case is consistent with the preclusion ruling in Alfone because there was not only no prior action for damages at the time of the decedent's death, but the decedent would have been barred from bringing a personal injury action at the time of death by the statute of limitations. Hence, under these circumstances we conclude that Knabe v. Hudson, supra, applies and the strong public policy of repose represented by the statute of limitations is satisfied. Indeed, Coulter v. New Jersey Pulverizing Co., supra (11 N.J.Misc. at 7, 163 A. 661), succinctly set forth the rationale for barring next of kin from bringing a wrongful death action where the decedent would have been barred by the statute of limitations:
If this were not so, if decedent lingered for twenty years and made no move, his representative could then assert a right of action to recover for an injury forgotten by everyone but the injured, who had slept on his rights for twenty years. Such could not have been the legislative intention.
"The statute cannot be construed to give the widow a greater right than the husband would have if living. The plaintiff's husband extinguished his right of action by failing to assert it within the two-year period fixed by the statute. A right of action can be extinguished as effectively by the statute of limitations as in any other way." Howard v. Bell Telephone Co., 306 Pa. 518, 160 A. 613, 615. See also Kelliher v. New York Central and Hudson River Railroad Co., 212 N.Y. 207, 105 N.E. 824, and the very recent case of Flynn v. New York, New Haven and Hartford Railroad Co., 283 U.S. 53 [51 S.Ct. 357, 75 L.Ed. 837].
[11 N.J.Misc. at 7, 163 A. 661].
In the present case, there is no res judicata principle at work. The interests in repose would not be furthered by entertaining plaintiff's claims. The wrongful death statute could not have been intended to breath new life into long stale claims. See Coulter v. New Jersey Pulverizing Co., supra (11 N.J.Misc. at 6-7, 163 A. 661); Alfone v. Sarno, supra (87 N.J. at 130, 432 A.2d 857 (Clifford, J. dissenting)).[9] Similarly, Lawlor never addressed the issue this court is confronted with today. Lawlor merely held that where a survival action arose after a suit had been initiated by the decedent while alive, an additional claim of wrongful death related back to the time the original personal injury action was commenced. Therefore, neither of these cases affect the applicability of Knabe to the case at hand.
In addition, and perhaps more significantly, it is questionable whether there is sufficient basis, without an expert report, to support plaintiff's cause of action. In light of our determination we need not *579 reach defendant's argument that if a wrongful death action accrued on the date of Ann Miller's death the affidavit of merit statute (N.J.S.A. 2A:53A-27) would apply.
In summary, the statute of limitations for a wrongful death action by decedent's representative is two years under N.J.S.A. 2A:31-3 where no suit was brought during the decedent's lifetime. Even allowing plaintiff the benefit of the discovery rule, the time to assert the malpractice claim expired here sometime in 1987. Thus, no right to maintain such a suit vests in the decedent's representative and a wrongful death action is barred. Knabe v. Hudson Bus. Transp. Co, supra (111 N.J.L. 333,168 A. 418).
Affirmed.
NOTES
[1] Judge Braithwaite did not participate in oral argument. However, the parties consented to his participation in the decision.
[2] At oral argument before the motion judge, plaintiff claimed that the conspiracy included a bank and a pharmacist.
[3] Her death certificate also listed chronic interstitial lung disease as another significant condition.
[4] Out of the 280 prescriptions recorded from 1978 through 1996, 127 were for Anne (including Prozac), from about eight doctors, 132 were for Cletis, and 21 were for a pet.
[5] Defendant counters that if the cause of action accrued on Ann Miller's death in 1996 then the affidavit of merit statute should apply. Alan J. Cornblatt, P.A. v. Barow, 153 N.J. 218, 708 A.2d 401 (1998).
[6] Paragraph 11 alleges in conclusory language: "The said deviation [by Dr. Sperling in prescribing Ovulen 28] was a proximate cause of her death as she died of an apparent heart attack."
[7] A wrongful death action would have been timely filed if there had remained a viable claim by the estate because plaintiff's wife died on March 30, 1996, and the complaint was filed on March 17, 1998. See N.J.S.A. 2A:31-3.
[8] The issue was addressed by this court in Silverman v. Lathrop, 168 N.J.Super. 333, 403 A.2d 18 (App.Div.1979), a companion case decided when this court considered Alfone v. Sarno, 168 N.J.Super. 315, 403 A.2d 9 (App. Div.1979), modified and aff'd, 87 N.J. 99, 432 A.2d 857 (1981). Although Alfone was considered by the Supreme Court, there is no subsequent history for Silverman which declined to follow Knabe and Coulter v. New Jersey Pulverizing Co., 11 N.J.Misc. 5, 163 A. 661 (Sup.Ct.1932) (noting that statute of limitations are practical and pragmatic devices designed to preclude litigation of stale claims and the resulting prejudice to defendant in having to defend such a suit), preferring instead to rely on dictum in Lawlor to conclude that "conditioning the cause of action for death on an extant and viable cause of action for personal injuries at the time of death is not required by the statutory language, logic, or credible precedent." Silverman v. Lathrop, supra (168 N.J.Super. at 342, 403 A.2d 18). However, other portions of Lawlor point to a contrary result. Lawlor, supra, 56 N.J. at 339, 266 A.2d 569.
[9] As noted by Justice Clifford: "It is well to recall occasionally that `the figure of justice is conventionally portrayed as carrying a pair of scales, not a cornucopia.'" Alfone v. Sarno, 87 N.J. 99, 124, 432 A.2d 857 (1981) (Clifford, J. dissenting) (quoting from Fleming, The Lost Years: A Problem in the Compilation and Distribution of Damages, 50 Calif.L.Rev. 598, 603 (1972)).