766 A.2d 738

CLETIS MILLER, INDIVIDUALLY AND AS EXECUTOR UNDER THE LAST WILL AND TESTAMENT OF ANN F. MILLER, DECEASED, PLAINTIFF–APPELLANT, v. ESTATE OF WALTER SPERLING, COLLETTA SPERLING, EXECUTRIX, DEFENDANT–RESPONDENT.

Argued September 25, 2000—Decided January 22, 2001.

*Willard E. Byer, Jr.*, argued the cause for appellant.

*Michael J. Lunga* argued the cause for respondent (*Lunga, Evers & Johnson*, attorneys).

*Alan Y. Medvin* argued the cause for amicus curiae, Association of Trial Lawyers of America New Jersey (*Medvin & Elberg*, attorneys).

The opinion of the Court was delivered by

ZAZZALI, J.

The issue here is whether a plaintiff's failure to timely file a medical malpractice claim precludes a later wrongful death action arising out of the alleged malpractice.

Dr. Sperling treated plaintiff's wife from the early 1960s until 1985. During that period, Dr. Sperling prescribed a medication for her that allegedly was taken off the market because of adverse side effects. Plaintiff's wife passed away in 1996 without filing a medical malpractice action. Plaintiff filed suit two years later, alleging that improper treatment caused his wife's death. The Law Division granted summary judgment, *Brill v. Guardian Life Ins. Co.*, 142 *N.J.* 520, 523, 666 *A.2d* 146 (1995), dismissing plaintiff's claims, and the Appellate Division affirmed, reasoning that a wrongful death action is derivative in nature and therefore contingent upon a viable malpractice action. *Miller v. Estate of Sperling*, 326 *N.J.Super.* 572, 583–84, 742 *A.2d* 572 (App.Div.1999). Because a wrongful death claim is an independent cause of action that cannot be extinguished by the failure of a decedent to maintain a medical malpractice action within the applicable limitations period, we reverse.

## I.

Giving plaintiff the benefit of all reasonable inferences, *Brill, supra,* 142 *N.J.* at 523, 666 *A.2d* 146, the facts are as follows.

Dr. Walter Sperling treated both plaintiff, Cletis Miller, and his wife, Ann T. Miller, from the early 1960s until 1985. Plaintiff claims that in 1972 Dr. Sperling prescribed birth control medication for Ann called Ovulen 28. She took that medication until 1985. According to plaintiff, however, Dr. Sperling did not tell Ann that the prescription was for a birth control medication, but told her that it was a tranquilizer for her nerves. He did not tell either Ann or her husband the true nature of the prescription until an office visit in 1985. The Millers left the office and never spoke

to Dr. Sperling again. Ann Miller ultimately discontinued taking Ovulen 28. Dr. Sperling retired shortly thereafter.[1]

Plaintiff and Ann attempted, unsuccessfully, to have Dr. Sperling criminally prosecuted. They also tried to retain an attorney to sue Dr. Sperling, but were unable to do so. Despite those efforts, neither plaintiff nor his wife initiated an action for malpractice or any other claim against Dr. Sperling during Ann's lifetime.

On March 30, 1996, Ann died at the age of sixty-six. Her death certificate states that she died of a suspected acute myocardial infarction accompanied by chronic interstitial lung disease. Dr. Sperling died in 1997. His wife, Coletta, who served as executrix of his estate, also died during the pendency of this appeal.

On March 17, 1998, thirteen days before the expiration of the two-year statute of limitations for a wrongful death claim, plaintiff filed a handwritten *pro se* complaint against the estate of Dr. Sperling. The complaint stated that Dr. Sperling's improper prescription of Ovulen 28 proximately caused Ann's myocardial infarction, leading to her death. Thus, the complaint sounded in survivorship, medical malpractice, and wrongful death.

As noted, plaintiff states that his wife took Ovulen 28 from 1972 until 1985. The pharmacy records submitted by him in discovery demonstrate only that Ovulen 28 was prescribed from 1974 to 1976. Defendant maintains that Dr. Sperling last prescribed the drug for plaintiff's wife in 1976. The estate's attorney represents that Dr. Sperling's office records for Ann Miller were discarded long before the complaint was filed. We do note that there was a suggestion by plaintiff's attorney at oral argument that medical

---

[1] During the course of this litigation, plaintiff has alleged that Dr. Sperling prescribed Ovulen 28 at the behest of his wife's family members, either due to their concerns about her ability to raise children or their desire to reduce the number of potential heirs. Whatever the reason, the gravamen of the *pro se* allegation is that Dr. Sperling prescribed birth control without the couple's knowledge.

records are in the possession of the Office of the Essex County Prosecutor.

Before the Law Division, defendant argued that plaintiff's claims were barred because he failed to comply with the two-year statute of limitations that governs medical malpractice claims, *N.J.S.A.* 2A:14–2. The Law Division, citing *Baird v. American Optics*, 155 *N.J.* 54, 66, 713 *A.*2d 1019 (1998), found that plaintiff knew or should have known about his claims against Dr. Sperling in 1985 and granted summary judgment for the estate. The Law Division did not address plaintiff's claim for wrongful death.

Plaintiff appealed and retained present counsel after filing a *pro se* brief before the Appellate Division. Although not raised in the Appellate Division brief, plaintiff's counsel addressed the wrongful death claim at oral argument before that court. Counsel contended that the two-year wrongful death statute of limitations, *N.J.S.A.* 2A:31–3, governed plaintiff's claim that Dr. Sperling's conduct contributed to decedent's death in 1996. Because plaintiff filed that claim within two years of Ann's death, counsel asserted it was timely filed. Although noting that it could disregard that claim because it was not raised below, the Appellate Division nonetheless decided to address the issue "in the interest of justice." *Miller, supra,* 326 *N.J.Super.* at 578, 742 *A.*2d 572.

The Appellate Division affirmed the grant of summary judgment concluding that "even though [the wrongful death] claim did not ripen or 'accrue' until plaintiff's wife died, decedent's failure to bring a personal injury action before the statute of limitation[s] expired barred the action due to the death claim's derivative nature." *Id.* at 578, 742 *A.*2d 572 (citing *Knabe v. Hudson Bus Transp. Co.,* 111 *N.J.L.* 333, 168 *A.* 418 (E. & A.1933) (citation and footnote omitted)). The court reasoned that *Knabe* has binding precedential force because it was decided by this Court's predecessor, the Court of Errors and Appeals. *Id.* at 580, 168 *A.* 418. The Appellate Division also agreed with the rationale of that decision, stating, "[i]n our view, *Knabe* presents a sensible rule which has withstood the test of time." *Id.* at 581, 168 *A.* 418.

Because the Appellate Division agreed that Ann's claim for medical malpractice was untimely, the panel also concluded that *Knabe* barred plaintiff's wrongful death claim. *Id.* at 584, 168 *A.* 418.

Finally, the Appellate Division determined that the application of *Knabe* to this case obviated the need for the court to reach defendant's contention that the Affidavit of Merit statute, *N.J.S.A.* 2A:53A–27, applied and also required dismissal of the complaint. *Miller, supra*, 326 *N.J.Super.* at 583, 742 *A.*2d 572.

This Court granted certification, 163 *N.J.* 397, 749 *A.*2d 370 (2000). We now overrule *Knabe* and hold that plaintiff filed a timely complaint for wrongful death.

## II.

The view widely embraced at English common law was that, in the words of Lord Ellenborough, "in a civil court, the death of a human being could not be complained of as an injury." *Baker v. Bolton,* 170 *Eng. Rep.* 1033 (K.B.1808). Many American courts followed the English common-law trend and resisted wrongful death claims because judges generally believed that such claims would improperly require them "to judicially calculate the value of human life; ... would lead to endless cases with large verdicts; that ... human life is sacred and it would be revolting to compensate its loss with money; and that it is impossible to calculate the pecuniary value of human life." *Farley v. Sartin,* 195 *W.Va.* 671, 466 *S.E.*2d 522, 526 (1995) (citations omitted). Whether New Jersey followed that trend is still a subject of debate. *Negron v. Llarena,* 156 *N.J.* 296, 315–16, 716 *A.*2d 1158 (1998) (Handler, J., concurring). "This rule remained the dominant view despite the illogical result that, under this rule, it was cheaper to kill one's victim than to merely injure him or her. For if one's victim were to live, the victim could bring an action against the tortfeasor. If the victim died, however, the right to bring an action met a similar fate." Gary A. Meadows, *Wrongful Death and the Lost Society of the Unborn,* 13 *J. Legal Med.* 99, 100 (1992).

The lack of a remedy for families of those who died because of the fault of another often led to destitution. W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser & Keeton on the Law of Torts* § 127 at 945 (5th ed.1984). To alleviate that hardship, the English Parliament passed the Fatal Accidents Act of 1846, also known as Lord Campbell's Act. *Ibid.* Recognizing the need to protect beneficiaries, New York led this nation's movement with the 1847 passage of the first wrongful death act modeled after Lord Campbell's Act. 22A *Am.Jur.*2d Death § 7 (1988). New Jersey followed suit in 1848 with *L.* 1848, *p.* 151, which was also patterned after Lord Campbell's Act. *Negron v. Llarena, supra,* 156 *N.J.* at 315, 716 *A.*2d 1158 (citations omitted). The current version of New Jersey's Wrongful Death Act provides in part that a wrongful death action may be pursued "[w]hen the death of a person is caused by a wrongful act, neglect or default, such as would, if death had not ensued, have entitled the person injured to maintain an action for damages resulting from the injury, the person who would have been liable in damages for the injury if death had not ensued shall be liable." *N.J.S.A.* 2A:31–1. The Act further states that "[e]very action brought under this chapter shall be commenced within 2 years after the death of the decedent, and not thereafter." *N.J.S.A.* 2A:31–3.

New Jersey's Wrongful Death statute has spawned five decisions that bear on this case. The first is *Knabe v. Hudson Bus Transp. Co., supra,* 111 *N.J.L.* 333, 168 *A.* 418, relied upon by the Appellate Division. The others are *Graf v. Taggert,* 43 *N.J.* 303, 204 *A.*2d 140 (1964), *Lawlor v. Cloverleaf Mem. Park, Inc.,* 56 *N.J.* 326, 266 *A.*2d 569 (1970), *Alfone v. Sarno,* 87 *N.J.* 99, 432 *A.*2d 857 (1981), *aff'g and modifying* 168 *N.J.Super.* 315, 403 *A.*2d 9 (App. Div.1979), and *Silverman v. Lathrop,* 168 *N.J.Super.* 333, 403 *A.*2d 18 (App.Div.1979). Those opinions represent first a gradation, and then a polarization, of various approaches.

## A. *Knabe*

In *Knabe,* an injury befell the decedent on January 12, 1927, and he died on July 3, 1930. An action was commenced under the

Death Act on June 29, 1932. The Court of Errors & Appeals accepted the reasoning in *Coulter v. New Jersey Pulverizing Co.*, 11 *N.J. Misc.* 5, 163 *A.* 661 (Sup.Ct.1932), and concluded that a "right of action" under the Wrongful Death Act did not vest when the decedent died. *Knabe, supra,* 111 *N.J.L.* at 334–35, 168 *A.* 418. The Court stated, "[w]e agree [with *Coulter* ] that, where any right of action by the living party injured was barred by limitation before his death, the Death Act . . . does not create a right of action in the personal representative." *Id.* at 335, 168 *A.* 418. *Knabe* adopted *Coulter's* perception of the legislative intent underlying the Wrongful Death Act:

> [If D]ecedent lingered for twenty years and made no move, his representative could then assert a right of action to recover for an injury forgotten by every one but the injured, who had slept on his rights for twenty years. Such could not have been the legislative intention.
>
> [*Coulter, supra,* 11 *N.J. Misc.* at 7, 163 *A.* 661.]

Based on that understanding, *Knabe* determined that the Act required a viable personal injury claim at the time of death in order for decedent's representative to maintain a wrongful death cause of action. *Knabe* did not, however, base that conclusion on the statutory language of the Wrongful Death Act, but, rather, relied solely upon the *Coulter* view of the legislative intent. *Knabe, supra,* 111 *N.J.L.* at 334–35, 168 *A.* 418.

### B. *Graf* and *Lawlor*

*Knabe* prevailed for the next thirty years until a subtle modification occurred in *Graf v. Taggert, supra,* 43 *N.J.* 303, 204 *A.*2d 140, and *Lawlor v. Cloverleaf Mem. Park, Inc., supra,* 56 *N.J.* 326, 266 *A.*2d 569.

The issue in *Graf* was whether the parents of a stillborn child, who suffered injuries while in the mother's womb, could recover under the Death Act. *Graf, supra,* 43 *N.J.* at 304, 204 *A.*2d 140. The ultimate holding in *Graf,* precluding recovery for injuries to the unborn child, is irrelevant to our analysis. We look instead to the *Graf* discussion of when a wrongful death action can be brought and, also, the Court's scrutiny of the statute. *Id.* at 305–

06, 204 A.2d 140. The *Graf* Court observed in *dicta* that the language in *N.J.S.A.* 2A:31–1, more particularly, the phrase, "such as would, if death had not ensued, have entitled the person injured to maintain an action for damages," was not intended to preclude recovery when an injured party failed to bring a malpractice action. Rather, the statute should be read only "to preclude recovery where the injured person could not have recovered because the defendant did not commit a wrongful act or the deceased's own conduct would have barred his right to recover." *Ibid.* (citations omitted).

*Lawlor* reached the same conclusion. *Lawlor, supra,* 56 *N.J.* 326, 266 A.2d 569. In that case, the decedent, while placing flowers on her mother's grave, fell into a hole and was injured. *Id.* at 329, 266 A.2d 569. She filed a complaint against the cemetery charging negligence. Twenty-six months after the accident, she died from the injuries. After she died, the cemetery filed a third-party complaint against the hospital and the doctors who treated her. The plaintiff's representatives subsequently filed an amendment to plaintiff's original complaint to include the doctor and the hospital. Because the Court allowed the amended complaint to relate back to the time of filing, the discussion whether a wrongful-death action could be filed more than two years after the alleged malpractice was *dictum* . Nonetheless, Justice Jacobs, writing for the Court, examined the language of *N.J.S.A.* 2A:31–1, which provided: "When the death of a person is caused by a wrongful act, neglect or default, *such as would, if death had not ensued, have entitled the person injured to maintain an action for damages.*" *Id.* at 344, 266 A.2d 569 (quoting *N.J.S.A.* 2A:31–1). He then commented favorably on out-of-state authority that adopted the "persuasive position that the statutory terminology 'relates to the character of the injury, without regard to the question of time of suit or death.'" *Id.* at 344–45, 266 A.2d 569 (citation omitted).

*Graf* and *Lawlor* thus shifted the focus from speculation about the Legislature's intent to the language of the Act itself, which

*Knabe* had not explicitly addressed, and noted that many out-of-state decisions had interpreted that language contrary to the holding of *Knabe*. *Graf* and *Lawlor* strongly intimated, but did not determine, that the wrongful death statute does not require a viable personal injury action as a prerequisite to the filing of a wrongful death cause of action

## C. *Alfone* and *Silverman*

That view was embraced by the Appellate Division in *Alfone v. Sarno, supra,* 168 *N.J.Super.* 315, 403 *A*.2d 9. In *Alfone,* the decedent sued Dr. Sarno for malpractice in 1968. She died in 1974. Within two years of her death, her father commenced a wrongful death action, alleging that the malpractice caused her death. Judge King asked whether "the [wrongful-death] cause of action is, in view of the [statutory] language, totally derivative from the rights possessed by decedent as of the time of death or is independent of decedent's rights[,] a separate cause of action inhering in the beneficiaries." *Id.* at 321, 403 *A*.2d 9. He concluded that beneficiaries under the Wrongful Death Act have a cause of action separate from and independent of the decedent's malpractice action. *Id.* at 323, 403 *A*.2d 9. That conclusion found its source in *Lawlor:*

> The continued validity in this jurisdiction of the derivative-dependent character of the [wrongful-death] cause of action is most questionable in light of *[di ]ictum* in the unanimous opinion of our Supreme Court in *Lawlor.*
>
> \* \* \*
>
> The Supreme Court's reference to the "persuasive position" of the many out-of-state cases, contrary to the *Knabe* view, which hold that "the statutory terminology 'relates to the character of the injury, without regard to the question of time of suit or death,'" though *dictum,* convinces us that *Knabe* has been discredited and would not now be followed by the Supreme Court. We therefore accept the view that the statutory terminology means nothing more than that where a person has been injured by a tortious act which later causes his death, the beneficiaries under the wrongful death act have a separate and independent right to action, qualified only by the strong policy against the recovery of duplicate damages.
>
> [*Alfone, supra,* 168 *N.J.Super.* at 325, 327–28, 403 *A*.2d 9 (citations omitted).]

The *Alfone* panel thus anticipated a ruling by this Court over-turning *Knabe*. Upon review, however, the Court allowed the

wrongful death action but on a narrower ground. We began by stating that *"Lawlor* did not overrule prior case law, nor did it decide the issue presented by this case. It left that decision to future determination." *Alfone, supra,* 87 *N.J.* at 106 n. 5, 432 *A.*2d 857. We then determined that maintaining a wrongful death action does not require the availability of an action for damages at the time of death. *Id.* at 102, 432 *A.*2d 857. In observing that "the wrongful death action creates separate rights in the beneficiaries," the Court *"agree[d] with the suggestion in Lawlor* and the holding of other authorities that maintenance of the action is not barred by a judgment in a suit brought by the decedent while alive" and that "a wrongful death action *is not contingent* upon the continuing availability of an action for decedent's personal injuries." *Id.* at 108–09, 432 *A.*2d 857 (emphasis added) (citations omitted).

Although the *Alfone* decision appeared to resolve the issue, the facts differ from the matter before us because the *Alfone* decedent pursued a malpractice case to judgment prior to her death. *Id.* at 102, 432 *A.*2d 857. The Court also stressed that *Lawlor* did not overrule prior case law, presumably referring to *Knabe. Id.* at 106 n. 5, 432 *A.*2d 857. Thus, *Alfone* is not a factual analogue to the case at bar; nor did it fully address the precise issue before us.

*Silverman v. Lathrop, supra,* 168 *N.J.Super.* at 340, 403 *A.*2d 18, decided on the same day that the Appellate Division decided *Alfone* and by the same panel, also rejected a "[d]efendant's contention that the wrongful death action is barred . . . based on the allegedly dependent-derivative character of the action." The decedent in *Silverman* filed a personal injury claim during his lifetime, but after the expiration of the statute of limitations. *Id.* at 336, 403 *A.*2d 18. After the decedent passed away, his executrix amended the complaint to include a wrongful death claim. The trial court granted summary judgment on the personal injury-survival claim, holding that it was barred by the statute of limitations. On appeal, Judge King succinctly identified the issue

as "whether the time-bar of the personal injury-survival action operates also to bar the wrongful death action." *Id.* at 340, 403 *A.*2d 18. The Appellate Division noted that the defendant relied upon the *Knabe* analysis to assert that the Death Act did not create a right of action in the personal representative after death if the right of action by the decedent was barred by the statute of limitations before his death. *Id.* at 340–41, 403 *A.*2d 18. "Defendant's contention that the wrongful death action is barred is based on the allegedly dependent-derivative character of the action, a theory which we have rejected this day in *Alfone v. Sarno.*" *Id.* at 340, 403 *A.*2d 18. The *Silverman* court also concluded that that reasoning conflicts with the statute of limitations contained in the Wrongful Death Act. *Id.* at 341, 403 *A.*2d 18. For those reasons, the Appellate Division allowed the action to be brought within two years after the death of the decedent. *Id.* at 342, 403 *A.*2d 18.

In so doing, *Silverman* set aside concerns about requiring defendants to litigate stale claims and recognized that wrongful-death actions serve a different purpose than malpractice actions. *Silverman* concluded that the statutory language at issue referred to the character of the injury, not to timing of the injury or decedent's attempts at redress.

### III.

"As a general rule of statutory construction, we look first to the language of the statute." *State v. Butler,* 89 *N.J.* 220, 226, 445 *A.*2d 399 (1982). Here, the Act provides that a wrongful death action may be pursued:

> When the death of a person is caused by a wrongful act, neglect or default, such as would, if death had not ensued, have entitled the person injured to maintain an action for damages resulting from the injury, the person who would have been liable in damages for the injury if death had not ensued shall be liable.
>
> [*N.J.S.A.* 2A:31–1.]

We are also guided by the principle that the Act is remedial in nature, and thus "is to be liberally construed." *Turon v. J. & L. Construction Co.,* 8 *N.J.* 543, 558, 86 *A.*2d 192 (1952).

Plaintiff contends that the disputed clause refers to the character of the underlying action by likening it to an action for injury brought by the decedent within his or her lifetime, not its instant availability, and that his only obligation is to file within two years of death. Defendant, on the other hand, contends that that language supports the *Knabe* rule. Defendant argues that "if death had not ensued," the decedent would not have been "entitled ... to maintain an action for damages" because she did not timely file the initial action for damages. As a result, defendant asserts, plaintiff's failure to file a timely personal injury action bars this wrongful death action. Defendant's interpretation, however, ignores the critical "such as would" language, which indicates a legislative intent merely to use the personal injury cause of action as an example of the type of injuries compensable under the Act. That language pertains to the "character of the injury," rather than requiring a viable personal injury cause of action as a prerequisite to maintaining a wrongful death claim.

Defendant's interpretation also conflicts with the Act's statute of limitations, which provides that "[e]very action brought under this chapter shall be commenced within 2 years after the death of the decedent, and not thereafter." *N.J.S.A.* 2A:31–3. That section gives a plaintiff two years from the date of death in which to file a wrongful death action. Defendant's interpretation would subvert that explicit language, as a plaintiff would only have two years from the date of the injury in which to file suit. *Silverman, supra,* 168 *N.J.Super.* at 341, 403 *A.*2d 18.

■ Finally, the *Knabe* rule creates an unacceptable paradox. Under that rule, a wrongful death claim could effectively be time-barred before the death itself. Speiser, *Wrongful Death and Injury,* § 11:10 (1999). For example, a person critically injured on January 1, 1998 would have until January 1, 2000 to file a personal injury action. If that hypothetical victim passed away on January 1, 2001 without filing such an action, *Knabe* would bar the wrongful death claim. Thus, the failure to file a personal injury claim by January 1, 2000 would bar the wrongful death claim,

which did not accrue until January 1, 2001, when the decedent died. *Ibid.* We construe legislation to avoid such an absurd result. *State v. Schad,* 160 *N.J.* 156, 170, 733 *A.*2d 1159 (1999).

After *Knabe* originated the derivative-dependent theory, *Graf, Lawlor, Alfone,* and *Silverman* all attempted to not only refocus the issue on the actual statutory language, which *Knabe* had not explicitly addressed, but also to avoid the harsh results of the *Knabe* rule. For the reasons we have discussed, we concur with those efforts and overrule *Knabe.* Our view is in accord with the national trend.

[T]he considerable majority of the courts have held that the statute runs against the death action only from the date of death, even though at that time the decedent's own action would have been barred while he [or she] was living. Only a few courts hold that it runs from the time of the original injury, and consequently that the death action may be lost before it ever has accrued.

[*Prosser & Keeton, supra* at 957 (footnotes omitted).]

Similarly, "in the great majority of jurisdictions which have considered the question, the limitation period applicable to a cause of action for wrongful death—whether contained in the statute creating the cause of action or in general statutes of limitation—begins to run from the date of death." Speiser, *Wrongful Death and Injury,* § 11:10 (1999); *see also Richardson v. Knud Hansen Mem'l Hosp.,* 744 *F.*2d 1007, 1011 (3rd Cir.1984) (applying Virgin Islands law to hold "that the accrual date for the action is the date of death," not date of injury); *Iida v.. Allied Signal, Inc.,* 854 *F.Supp.* 702, 712 (D.Hawai'i 1994) (holding that wrongful death action brought within two years of date of death from asbestosis but more than two years after diagnosis accrued at time of death of decedent rather than at time of injury); *Hart v. Eldridge,* 250 *Ga.* 526, 299 *S.E.*2d 560, 561 (1983) ("[S]tatute of limitations for a wrongful death action emanating from medical malpractice begins to run from the date of death, not from the date of the negligent act or omission of the practitioner."); *Chapman v. Cardiac Pacemakers, Inc.,* 105 *Idaho* 785, 673 *P.*2d 385, 386–87 (1983) (certified question from federal district court) ("[T]he law is clear that a cause of action for wrongful death accrues on the death of the injured party, and not before. This is so because the cause of

action did not accrue to the decedent.... The cause of action which accrues to an injured person during his lifetime is altogether separate from the cause of action accruing to the person's heirs should he [or she] die of that injury."); *Farmers Bank and Trust Co. v. Rice,* 674 *S.W.*2d 510, 512 (Ky.1984) ("[T]he statute of limitations for wrongful death actions runs from the death of the decedent, even though there was no viable action for personal injury or medical negligence or malpractice at the time of death."); *Bregant v. Fink,* 724 *S.W.*2d 337, 338 (Mo.Ct.App.1987) ("[A]n action for a death resulting from malpractice is a wrongful death action, not a malpractice action."); *Krowicki v. St. Elizabeth Hosp.,* 113 *A.D.*2d 1023, 494 *N.Y.S.*2d 590, 591 (N.Y.App.Div.1985) (holding that action for wrongful death was governed by two-year period of limitation for commencement of wrongful death actions, and not by two and one-half-year period applying to medical malpractice actions, notwithstanding fact that death allegedly resulted from medical malpractice); *Ness v. St. Aloisius Hospital,* 301 *N.W.*2d 647, 652–53 (N.D.1981) (holding that medical malpractice statute of limitations not applicable in wrongful death actions, even though wrongful death action is based upon medical malpractice); *Koler v. St. Joseph Hosp.,* 69 *Ohio St.*2d 477, 432 *N.E.*2d 821, 824 (1982) (concluding that although malpractice actions were governed by one-year statute of limitations, wrongful death action based on medical malpractice was governed by two-year statute of limitations); *Shaughnessy v. Spray,* 55 *Or.App.* 42, 637 *P.*2d 182, 187 (1981) ("[T]he wrongful death statute's limitation period applies to all wrongful death actions and the tort limitation period which would have been germane if death had not resulted does not apply.").

Commentators also endorse the majority view. Prosser states:

It is not at all clear ... that such provisions of the death acts ever were intended to prevent recovery where the deceased once had a cause of action, but it has terminated before his death. The more reasonable interpretation would seem to be that they are directed at the necessity of some original tort on the part of the defendant, under circumstances giving rise to liability in the first instance, rather than to subsequent changes in the situation affecting only the interest of the decedent.

Speiser suggests that the argument that "the tortfeasor's liability ... should be established within a reasonable period of time ... is equally convincing." Speiser, *supra* at § 11:10. Nevertheless, he concludes that barring such wrongful death claims is "unjust." *Ibid.* It is understandable that some victims may be disinclined to pursue a malpractice action, either because their focus is on survival, or for a host of other reasons, and the heirs then decide to pursue a wrongful death claim after the injured party's death. *Ibid.*

■ We hold that the limitations of *N.J.S.A.* 2A:31–3 do not speak to jurisdictional or procedural matters that might prevent a decedent from instituting an action at death. Rather, they pertain solely to the character of the injury. *Alfone, supra,* 87 *N.J.* at 106–07, 432 *A.*2d 857; *Lawlor, supra,* 56 *N.J.* at 344–45, 266 *A.*2d 569. The statutory language is designed "to prevent recovery for death where the decedent could never at any time have maintained an action, as, for example, where there was simply no tortious conduct toward him." Prosser & Keeton, *supra* at 954. Our conclusion is in accordance with the majority rule, as well as the views of well-known commentators.

That conclusion does not suggest indifference to principles of repose, stability, and finality. We are mindful that statutes of limitations should provide a party "freedom from the burden of defending stale claims." *Greco v. Valley Fair Enterprises,* 105 *N.J.Super.* 582, 584, 253 *A.*2d 814 (App.Div.1969). However, our allowance of the filing of such wrongful death claims, notwithstanding a given plaintiff's years of inadvertent inaction or purposeful delay, is not draconian. By comparison, children born today can file a personal injury complaint up to two years after reaching the age of majority. *N.J.S.A.* 2A:14–21. For representatives of birth-injured children to defer their claims for ten to fifteen years is not unusual. They do so at their peril and such plaintiffs assume the risk that there may be problems of proof or other obstacles when they postpone the exercise of their statutory

right. But their right to sue remains extant despite deferral. In the matter before us, the hiatus between the last alleged act of malpractice in 1985 and the filing of the 1998 wrongful death claim may prevent adjudication of the merits of that claim. However, that delay does not justify precluding plaintiff's wrongful death claim on the grounds urged here.

## IV.

We do not address the application of the Affidavit of Merit statute, *N.J.S.A.* 2A:53A–27, to plaintiff's claim. Nor do we address any other aspects of this case, either procedural or substantive, other than to note the fragile nature of plaintiff's claim.

Although proximate cause is generally an issue for the jury, *Perez v. Wyeth Laboratories, Inc.,* 161 *N.J.* 1, 27, 734 *A.*2d 1245 (1999) (quoting *Garrison v. Township of Middletown,* 154 *N.J.* 282, 308, 712 *A.*2d 1101 (1998) (Stein, J., concurring), we do not suggest that the jury must decide that issue in this case. There are occasions when a court may resolve that issue, as our concurring colleague notes. *Vega by Muniz v. Piedilato,* 154 *N.J.* 496, 508–09, 713 *A.*2d 442 (1998). We therefore urge the motion court to fully examine the record on the issue of proximate causation, as well as any other substantive and procedural questions presented, and determine whether plaintiff's claim may be considered by a jury. The motion court will have the benefit of an adversarially—honed record on the causation issue, and will thus be able to make an informed decision. This Court, without the benefit of that record, should not resolve the proximate cause question. Moreover, the causation issue is not before us, as defendant has not asked us to rule on those grounds, and we therefore decline to dismiss plaintiff's claim *sua sponte* on grounds not before this Court.

In summary, we overrule *Knabe* and reverse the panel below. A claim for wrongful death is independent of a claim for

malpractice. We interpret the statutory language to refer only to the character of the injury, and not to require a viable personal injury cause of action as a condition precedent to maintaining a wrongful death claim. Decedent's failure to file an action in her lifetime does not bar the death action. We conclude that plaintiff's right to file the wrongful death claim outweighs defendant's interest in repose, in light of the overarching need to preserve rights established by the Legislature for those who survive a decedent. *Alfone, supra,* 87 *N.J.* at 123, 432 *A.*2d 857. A different result not only conflicts with the language of the Act, but could extinguish a wrongful death action even before it came into existence. We reject such a result.

Reversed and remanded.

VERNIERO, J., concurring.

In its careful analysis, the Court correctly concludes that a death action and a malpractice action are independent claims. Thus, plaintiff filed this lawsuit within the limitations period contained in the wrongful death statute. I write separately to emphasize that nothing in the language of that statute prevents the trial court from applying principles of causation and other tenets to this or any similar case.

"Proximate or legal causation is that combination of 'logic, common sense, justice, policy and precedent' that fixes a point in a chain of events, some foreseeable and some unforeseeable, beyond which the law will bar recovery." *People Express Airlines, Inc. v. Consol. Rail Corp.,* 100 *N.J.* 246, 264, 495 *A.*2d 107 (1985) (citation and internal quotation omitted). "[T]he limit of proximate cause is, ultimately, an issue of law and ... entails a consideration of public policy and fairness." *Williamson v. Waldman,* 150 *N.J.* 232, 245, 696 *A.*2d 14 (1997). Ordinarily, issues of proximate cause are considered jury questions. *Perez v. Wyeth Labs., Inc.,* 161 *N.J.* 1, 27, 734 *A.*2d 1245 (1999). On occasion, however, a court may resolve that issue itself. *Ibid.* The *Restatement (Second) of Torts* states that courts may resolve for themselves the question of

legal or proximate causation if they believe that a reasonable jury could not find such causation on the facts presented. "The actor's conduct may be held not to be a legal cause of harm to another where after the event and looking back from the harm to the actor's negligent conduct, it appears to the court highly extraordinary that it should have brought about the harm." *Restatement (Second) of Torts* § 435(2) (1965).

There is ample precedent in New Jersey authorizing courts to resolve the issue of proximate cause in any case in which reasonable minds could not differ on whether that element of the plaintiff's case has been established. *See, e.g.; Caputzal v. The Lindsay Co.*, 48 *N.J.* 69, 78–79, 222 *A.*2d 513 (1966) (discussing case law and other authority in support of rule). In a recent case, *Vega by Muniz v. Piedilato*, 154 *N.J.* 496, 713 *A.*2d 442 (1998), this Court invoked that authority in dismissing the plaintiff's case on causation grounds. In *Vega*, a fourteen-year-old boy trespassed on the roof of the defendant's apartment building and fell into an air shaft, suffering tragic injuries. *Id.* at 499–500, 713 *A.*2d 442. The plaintiff advanced numerous allegations of negligence, including the defendant's failure to prevent access to the roof for security purposes. *Id.* at 509, 713 *A.*2d 442.

In upholding the summary dismissal of the plaintiff's claim, the Court explained:

> We do not believe that a fair-minded jury could find that the lack of security measures was the cause of the fall. The cause of the accident and injuries was the plaintiff's unsuccessful effort to leap this divide. Even when parties have a special relationship to others requiring them to act to prevent foreseeable harm, the issue of proximate cause is always present. *See Cowan v. Doering*, 111 *N.J.* 451, 545 *A.*2d 159 (1988) (holding that causation would be issue in case of incompetent patient leaping from hospital window).
>
> [*Ibid.*]

In the present case, Mrs. Miller died on March 30, 1996. Dr. Sperling's alleged tortious conduct occurred twenty years prior to decedent's death. According to the undisputed pharmacy logs, Ovulen 28, the drug in question, was prescribed by Dr. Sperling in 1974 and last renewed in 1976, some twenty years before decedent's death. Other than those logs, which merely confirm the

prescription dates, there are no available charts, journals, physician notes, or medical records of any kind to support plaintiff's claim. Moreover, both the doctor and his patient have never been deposed and are now deceased, making it impossible to consider testimonial evidence from the central fact witnesses. Against that backdrop, the question for the motion court will be whether a reasonable jury could find that the doctor's alleged conduct caused the complained-of injury.

I do not diminish the distress and sense of sadness that inevitably occur whenever a person loses a spouse or loved one. This may be a rare case in which, given the lack of medical records and unavailability of witnesses, there is no issue capable of legitimate resolution. In a different context, the Appellate Division has observed that "the right to be free of stale claims in time comes to prevail over the right to prosecute them." *DeDisto v. Linden*, 80 *N.J.Super.* 398, 406, 193 *A.*2d 870 (App.Div.1963) (quoting 53 *C.J.S. Limitations of Actions* § 1(b)(1) n. 19 (1948)). "Once memories fade, witnesses become unavailable, and evidence is lost, courts no longer possess the capacity to distinguish valid claims from those which are frivolous or vexatious." *Galligan v. Westfield Ctr. Serv., Inc.*, 82 *N.J.* 188, 192, 412 *A.*2d 122 (1980).

In sum, I agree with the Court that plaintiff filed this action within the limitations period contained in the wrongful death statute. That holding does not, in this or any future case, preclude a court from determining the legal viability of a plaintiff's claim by applying principles of causation or other traditional tenets.

*For reversal and remandment*—Chief Justice PORITZ and Justices STEIN, COLEMAN, LONG, VERNIERO, LaVECCHIA and ZAZZALI—7.

*Opposed*—None.