997 A.2d 246 (2010)
413 N.J. Super. 562
Sheila ARONBERG, as General Administratrix and Administratrix ad Prosequendum of the Estate of Lawrence R. Aronberg, deceased, Plaintiff-Respondent,
v.
Wendell TOLBERT and Fleetwood Taggart d/b/a Fleetwood Trucking, Defendants-Appellants, and
Allstate New Jersey Insurance Company, Defendant.
DOCKET NO. A-4896-08T3.
Superior Court of New Jersey, Appellate Division.
Argued October 28, 2009.
Decided June 8, 2010.
*247 Stephen A. Rudolph argued the cause for appellant (Monte & Rudolph, attorneys; *248 David M. Molnar, Sea Girt, on the brief).
David Maran argued the cause for respondent (Maran & Maran, PC, attorneys; Mr. Maran, Newark, on the brief).
Before Judges FISHER, SAPP-PETERSON and ESPINOSA.
The opinion of the court was delivered by
ESPINOSA, J.A.D.
N.J.S.A. 39:6A-4.5(a) bars uninsured drivers from suing for personal injuries sustained in automobile accidents. This case presents the issue whether that statutory bar applies to a wrongful death action brought by the uninsured decedent's heirs. We conclude that it does not.
Lawrence Aronberg, a New Jersey resident, insured his automobile with Allstate Insurance Company (Allstate). As a result of his failure to pay premiums when due, the insurance was canceled prior to his fatal motor vehicle accident. His mother, plaintiff Sheila Aronberg, brought this action, alleging a survival claim on behalf of the decedent and a wrongful death claim on behalf of his estate, against Wendell Tolbert, a driver involved in the accident, and his employer. Defendants' motion for summary judgment was granted in part, resulting in the dismissal of the survival claim, and denied as to the wrongful death claim. We granted defendants' motion for leave to appeal and now affirm.
Allstate's Statement of Account reflected that, after Aronberg failed to pay the premium due in April 2005, Allstate sent him a "renewal cancellation bill of $324.37 due 5/24/05," which was for the equivalent of two months' premiums. Aronberg paid the full amount of $324.37 on May 13, 2005 and avoided cancellation. The policy was renewed in May 2005 for the period from May 24, 2005 to November 24, 2005.
Aronberg failed to pay the July premium of $143.60 by its due date of July 24, 2005. Allstate sent him an automobile policy cancellation notice for non-payment of premium, dated August 5, 2005. The notice advised Aronberg that he was required to make a payment of the "Minimum Amount Due," $287.20, by August 23, 2005 to avoid cancellation. Like the notice sent after the April delinquency, this notice required him to bring the account current by paying the equivalent of the premiums for July and August by the due date for the August premium. The notice emphasized the need for Allstate to receive the full amount due by that date:
If you want your insurance coverage to continue and do not want it to cancel, please make sure we receive the Minimum Amount Due by the end of the day (midnight) on August 23, 2005 or your policy will cancel at 12:01 a.m. Standard Time on August 24, 2005.
Aronberg made a payment of $143.60 on August 5, 2005. Because this payment fell short of the Minimum Amount Due, Allstate forwarded a "Special Notice" on August 5, 2005 that acknowledged his payment and advised that his continuing delinquency would result in the cancellation of the policy. The Special Notice advised:
Please be advised that your cancellation effective date is/was 12:01 a.m. on August 24, 2005. Your payment of $143.60 was received on August 5, 2005. This amount has been applied to your policy; however, as of the date of this notice, we still have not received the Minimum Amount Due. Please note that the Cancellation Notice previously sent to you on August 4, 2005 will be enforced unless the full Minimum Amount Due is received before 12:01 a.m. on August 24, 2005.

*249 In order to avoid having your policy cancel, we must receive an additional payment of $143.60 before your cancellation effective date which is/was 12:01 a.m. on August 24, 2005.
Otherwise, your policy will terminate according to the Cancellation Notice we previously sent you.
Aronberg made no further payments before the accident and his death on September 15, 2005.
A payment of $143.60 was made on or about September 20, 2005, by an heir or representative of the decedent after his death. Allstate sent a reinstatement notice that recited the dates of cancellation (August 24, 2005) and reinstatement (September 20, 2005). Allstate's Statement of Account reflects a credit of $123.70 for the time that coverage had lapsed. The reinstatement notice noted the following condition of receipt of the September payment:
[O]ur acceptance of this payment does not (a) reinstate the policy, or (b) afford coverage for any accident, occurrence, or loss which took place before this receipt was issued.
At the close of discovery, defendants filed a motion for summary judgment, seeking the dismissal of the survival and wrongful death claims. The court granted the motion as to the survival action but denied the motion to dismiss the wrongful death action. Plaintiffs did not seek leave to appeal from the dismissal of the survival action. We granted defendants' motion for leave to appeal from the denial of their motion to dismiss the wrongful death action, in which they raise the following issues:
POINT I
THE TRIAL COURT ERRED IN NOT DISMISSING THE WRONGFUL DEATH CLAIMS OF DECEDENT'S HEIRS AFTER HOLDING THAT THE DECEDENT'S CLAIMS WERE BARRED FOR HIS FAILURE TO MAINTAIN AUTOMOBILE INSURANCE AND OPERATING AN UNINSURED VEHICLE AT THE TIME OF THE ACCIDENT IN VIOLATION OF N.J.S.A. 39:6A-4.5 ET. SEQ.

A. THE LEGISLATURE'S ENACTMENT OF THE PROSCRIPTIONS OF N.J.S.A 39:6A-4.5 DID NOT INTEND TO PERMIT FAMILY MEMBERS TO CONTINUE TO BENEFIT FROM THE MISCONDUCT OF ONE WHO FAILS TO MAINTAIN MANDATORY AUTOMOBILE INSURANCE COVERAGES.
B. THE ENTITLEMENTS, BENEFITS, LIMITATIONS AND RESTRICTIONS ARISING FROM NEW JERSEY'S NO-FAULT STATUTES APPLY EQUALLY TO NOT ONLY THE NAMED INSURED BUT ALSO TO ANY MEMBERS OF HIS/HER FAMILY.
C. NEW JERSEY'S WRONGFUL DEATH AND SURVIVORSHIP STATUTES MUST BE READ IN PARI MATERIA WITH THE PROVISIONS OF AICRA WHEN VIEWING THE LEGISLATURE'S RESPECTIVE PURPOSES IN ENACTING THOSE RESPECTIVE STATUTORY CAUSES OF ACTION.
When reviewing a grant of summary judgment, we employ the same standard used by the trial court, which grants summary judgment if the record shows that "there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). Burnett v. Gloucester County Bd. of Chosen Freeholders, 409 N.J.Super. 219, 228, 976 A.2d 444 (App.Div.2009); Prudential *250 Prop. & Cas. Ins. Co. v. Boylan, 307 N.J.Super. 162, 167, 704 A.2d 597 (App. Div), certif. denied, 154 N.J. 608, 713 A.2d 499 (1998). Issues of law are reviewed de novo, without deference to the trial court's conclusions on issues of law. Zabilowicz v. Kelsey, 200 N.J. 507, 512-13, 984 A.2d 872 (2009). Following our review, we agree with the trial court that the statutory bar created by N.J.S.A. 39:6A-4.5(a) applies to survival actions but not to wrongful death actions. This result is not anomalous, as the dissent suggests, but rather, fully consistent with both the language of N.J.S.A. 39:6A-4.5 and the Wrongful Death Act, N.J.S.A. 2A:31-1 to -6, and their underlying policies.
N.J.S.A. 39:6A-4.5 implements a public policy rationale "to deter drunk driving, the intentional use of automobiles as weapons, and drivers from operating uninsured vehicles" by barring such drivers from maintaining an action for damages arising from an automobile accident. Caviglia v. Royal Tours of Am., 178 N.J. 460, 474, 842 A.2d 125 (2004).
N.J.S.A. 39:6A-4.5(a) provides:
Any person who, at the time of an automobile accident resulting in injuries to that person, is required but fails to maintain [mandatory] medical expense benefits coverage ... shall have no cause of action for recovery of economic or noneconomic loss sustained as a result of an accident while operating an uninsured automobile.
This provision "advances a policy of cost containment by ensuring that an injured, uninsured driver does not draw on the pool of accident-victim insurance funds to which he did not contribute" and "gives the uninsured driver a very powerful incentive to comply with the compulsory insurance laws." Caviglia, supra, 178 N.J. at 471, 842 A.2d 125.
Because Aronberg was driving his uninsured automobile at the time of the accident, he would have been statutorily barred from asserting a cause of action for losses sustained in the accident if he had lived. Defendants argue that the statutory bar should also apply to both the survival and the wrongful death claims, because both are derivative of and dependent on his death.[1] However, this common factor does not dictate that the two causes of action will be extinguished on the same grounds.
It is well established that a wrongful death action can be viable under circumstances in which a survival action is barred. See, e.g., Miller v. Estate of Sperling, 166 N.J. 370, 382-83, 386, 766 A.2d 738 (2001) (decedent's heirs permitted to bring a wrongful death claim based upon medical malpractice even though decedent failed to assert claim before expiration of statute of limitations); Alfone v. Sarno, 87 N.J. 99, 110, 432 A.2d 857 (1981) (although decedent's right to sue for personal injuries had been extinguished by a previous judgment or settlement, the wrongful death action could be maintained for those elements of damages not recoverable in an earlier action); Gershon v. Regency Diving Ctr., Inc., 368 N.J.Super. 237, 247, 845 A.2d 720 (App.Div.2004) ("Decedent's unilateral decision to contractually waive his right of recovery [did] not preclude his *251 heirs ... from instituting and prosecuting a wrongful death action."); Troum v. Newark Beth Israel Med. Ctr., 338 N.J.Super. 1, 27, 768 A.2d 177 (App.Div.) (where decedent failed to timely file a medical malpractice action, the statute of limitations barred a survival action but a wrongful death action based upon the same alleged negligence was unaffected), certif. denied, 168 N.J. 295, 773 A.2d 1158 (2001).
The difference in these results derives from the fact that actions under the New Jersey Wrongful Death Act and the New Jersey Survivor Act "serve different purposes and are designed to provide a remedy to different parties." Smith v. Whitaker, 160 N.J. 221, 231, 734 A.2d 243 (1999). See also N.J. Div. of Youth & Family Servs. v. M.W., 398 N.J.Super. 266, 289, 942 A.2d 1 (App.Div.), certif. denied, 196 N.J. 347, 953 A.2d 765 (2008); F.F. v. G.A.D.R., 331 N.J.Super. 23, 27-28, 750 A.2d 786 (App.Div.) ("The cause of action for wrongful death and the deceased's own cause of action for personal injuries are separate and distinct claims.... The decedent's personal claim is an asset of his estate; the death claim is not."), certif. denied, 165 N.J. 530, 760 A.2d 784 (2000).
A survival action permits the decedent's estate to pursue any cause of action that the decedent would have had if he had survived. Galante v. May, 364 N.J.Super. 284, 288, 835 A.2d 352 (App.Div.2003). Because of this unity of identity between the claim asserted in the survival action and the claim that would have been asserted by the decedent if he had lived, it is reasonable to apply a bar designed to punish the decedent uninsured driver to the survival action that seeks to vindicate the claim of the uninsured driver who has died. Accordingly, the trial court correctly granted summary judgment dismissing that claim, a result that plaintiff has not sought leave to appeal. It does not follow, however, that the statutory bar should also apply to the wrongful death action.
The Wrongful Death Act, N.J.S.A. 2A:31-1 to -6, is remedial legislation that is designed to "eliminate the inequity of denying all right of recovery for the death of a family member." Alfone, supra, 87 N.J. at 109, 432 A.2d 857. In contrast to the survival action, recovery under the Wrongful Death Act compensates the survivors of the decedent for their losses[2] as a result of the tortious conduct of others, ibid., and does not accrue to the decedent or his estate as a matter of law. Miller, supra, 166 N.J. at 383-84, 766 A.2d 738.
The argument that the wrongful death action here should be barred rests largely on the language in the statute that suggests that the right to sue is limited to circumstances in which the decedent would have been able to maintain a cause of action. Since Aronberg would not have been "entitled ... to maintain an action for [his] damages," it is argued that the Wrongful Death Act does not grant his heirs the right to sue for their damages.
However, a comparison of the language in the statutes does not support this conclusion. First of all, N.J.S.A. 39:6A-4.5(a) has a narrowly circumscribed target. The statutory bar is explicitly limited to the person who fails to maintain compulsory insurance and is applied only when he is *252 injured while driving the uninsured vehicle. "Any person who [fails to maintain mandatory coverage] shall have no cause of action for recovery of ... loss sustained as a result of an accident while operating an uninsured automobile" N.J.S.A. 39:6A-4.5(a). Therefore, the punitive effect of the statute is limitedboth to the person who failed to obtain insurance and to particular circumstances. Even the uninsured motorist who is the target of the statute escapes the bar if he or she happens to be a passenger when injured. See Dziuba v. Fletcher, 188 N.J. 339, 340, 907 A.2d 427 (2006) (N.J.S.A. 39:6A-4.5(a) did not bar recovery of non-economic damages by plaintiff, an uninsured motorist, because he was not operating his uninsured vehicle when he was injured).
Moreover, contrary to the interpretation adopted by the dissent, the language of the Wrongful Death Act does not link the viability of a claim under that statute "to the victim's possession of" a viable claim. The statute authorizes a wrongful death action "[w]hen the death of a person is caused by a wrongful act ... such as would, if death had not ensued, have entitled the person injured to maintain an action for damages resulting from the injury[.]" N.J.S.A. 2A:31-1 (emphasis added). The focus is on the "wrongful act" that caused death and whether that constituted an actionable tort ab initio rather than the broader concept of viability, which could be affected by the decedent's actions or inaction at some point after the wrongful act occurred. Therefore, the facts that give rise to the claim are death, causation and a wrongful act that constitutes an actionable tort.
As the Supreme Court explained in Miller, supra, 166 N.J. at 382, 766 A.2d 738, the limiting language in the Wrongful Death Act pertains only to the character of the injury, and is not intended as a procedural or jurisdictional requirement. In so holding, the Court agreed that "[t]he more reasonable interpretation" of such language is that it is "directed at the necessity of some original tort on the part of the defendant, under circumstances giving rise to liability in the first instance, rather than to subsequent changes in the situation affecting only the interest of the decedent." Id. at 384-85, 766 A.2d 738 (quoting W. Keeton, et al, Prosser & Keeton on the Law of Torts § 127 at 945 (5th ed. 1984)). The limiting language is designed only "to prevent recovery for death where the decedent could never at any time have maintained an action, as, for example, where there was simply no tortious conduct toward him." Id. at 385, 766 A.2d 738 (quoting Prosser & Keeton, supra, § 127 at 954) (emphasis added). Accordingly, in Miller, the Supreme Court concluded that "a wrongful death claim is an independent cause of action that cannot be extinguished" by the decedent's failure to bring an action based upon the underlying tort before the expiration of the statute of limitations. 166 N.J. at 372, 766 A.2d 738. See also Alfone, supra, 87 N.J. at 110, 432 A.2d 857 ("We conclude that the right of action for wrongful death under N.J.S.A. 2A:31-1 to -6 depends upon the occurrence of a wrongful and ultimately fatal act... and is not limited to the availability of decedent's own cause of action had he survived.").
In this case, the character of the injurydeath as the result of allegedly tortious conductprovides the requisite factual basis for an action to recover damages under the Wrongful Death Act. Because the Wrongful Death Act is remedial legislation, it must be liberally construed to serve its purpose of creating a right of recovery for the economic loss caused by the death of a family member. Miller, supra, 166 N.J. at 381, 766 A.2d 738; *253 Smith, supra, 160 N.J. at 232, 734 A.2d 243; Gershon, supra, 368 N.J.Super. at 245, 845 A.2d 720. Our review of the language and legislative intent expressed in N.J.S.A. 39:6A-4.5(a) leads us to conclude that the application of the statutory bar to a wrongful death action would needlessly curtail the Wrongful Death Act's remedial purpose without any appreciable advancement of the goals of N.J.S.A. 39:6A-4.5(a).
There are two goals inherent in N.J.S.A. 39:6A-4.5(a), i.e., to punish the uninsured driver and to create an incentive to comply with compulsory insurance laws. Neither of these goals is served by extending the statutory bar to wrongful death actions.
As noted, by its very language, the punitive reach of N.J.S.A. 39:6A-4.5(a) does not extend to the culpable uninsured motorist who is not operating the uninsured vehicle when injured. The target of the punitive goal is limited to "[a]ny person" who is required to obtain insurance, fails to do so and is injured while operating the uninsured vehicle. There is nothing in the language of N.J.S.A. 39:6A-4.5(a) that supports the conclusion that the Legislature intended to target innocent family members without any culpability for the lack of insurance. We can perceive no rational explanation for why such persons should be deprived of a cause of action for the damages they incur when the uninsured motorist who is injured while a passenger is unaffected by the statutory bar. Moreover, there is little likelihood that applying the bar to the wrongful death action would enhance the incentive to obtain insurance for those drivers who remained unmoved by the bar to their own ability to maintain an action.
We have declined to apply the statutory bar when its punitive aspects conflicted with other matters of public policy or, as here, did not serve the statute's policies. E.g., Walcott v. Allstate N.J. Ins. Co., 376 N.J.Super. 384, 392, 870 A.2d 691 (App. Div.2005) (declining to apply bar to the recovery of PIP benefits by drunk drivers); Camp v. Lummino, 352 N.J.Super. 414, 800 A.2d 234 (App.Div.2002) (declining to bar suit of underage plaintiff against the social host at whose home he had been drinking before an accident); Rojas v. DePaolo, 357 N.J.Super. 115, 119-20, 813 A.2d 1288 (Law Div.2002) (declining to apply bar to uninsured out-of-state driver). We decline to apply the statutory bar to wrongful death actions here as well, based upon the language of the two statutes and our conclusion that an application of the statutory bar would needlessly misdirect punishment to family members the Legislature intended to protect without advancing the goals of N.J.S.A. 39:6A-4.5(a).
Affirmed.
FISHER, J.A.D., dissenting.
According to the complaint, Lawrence Aronberg was tragically killed when the vehicle he was operating on the New Jersey Turnpike first collided with the rear of a tractor trailer, which had slowed due to an accident further ahead, and then was struck in the rear by defendant's tractor-trailer. Approximately three weeks earlier, Allstate Insurance Company cancelled Aronberg's automobile insurance policy for nonpayment of premiums.[1]
This action was filed by Aronberg's mother, who asserted claims on her own behalf based on the Wrongful Death Act, N.J.S.A. 2A:31-1 to -6, and on behalf of Aronberg's estate based on the Survival Act, N.J.S.A. 2A:15-3. Defendant moved *254 for summary judgment, relying on N.J.S.A. 39:6A-4.5(a) (emphasis added), which declares that a "person who, at the time of an automobile accident resulting in injuries to that person, is required but fails to maintain [mandatory insurance coverage]... shall have no cause of action for recovery of economic or noneconomic loss sustained as a result of an accident while operating an uninsured automobile." The trial judge granted the motion in most respects; the judge, however, determined that even though Aronberg could have no cause of action because of N.J.S.A. 39:6A-4.5(a), his heir's wrongful death action could proceed. We granted leave to appeal in order to consider the viability of the wrongful death action.
My colleagues have determined that the wrongful death action is not barred by decedent's failure to maintain mandatory automobile insurance. I respectfully disagree.
I would reverse because N.J.S.A. 39:6A-4.5(a) unmistakably declares that "no cause of action" arises when injuries are sustained by a person operating an uninsured vehicle, and the wrongful death statute, N.J.S.A. 2A:31-1, links the viability of a wrongful death action to the victim's possession of a claim "such as would, if death had not ensued, have entitled the person injured to maintain an action for damages resulting from the injury." Despite the clear language of these statutes, the majority has determined that a wrongful death claim is different or somehow exempt from the broad scope of N.J.S.A. 39:6A-4.5(a). Such a holding creates the anomalous circumstance that had Aronberg livedno matter how seriously injured or maimed and regardless of the extent to which his injuries would have impacted his dependentshe would have no remedy, but his heir may proceed on her cause of action because Aronberg died as a result of the same circumstances.
I do not dispute the majority's premise that the wrongful death statute serves a different purpose than, for example, the survival statute,[2] but that difference largely resides in the pool of persons entitled to relief. Smith v. Whitaker, 160 N.J. 221, 231, 734 A.2d 243 (1999). That is, the survival statute "preserves to the decedent's estate any personal cause of action that decedent would have had if he or she had survived," id. at 233, 734 A.2d 243, whereas "[t]he fundamental purpose of a wrongful death action is to compensate survivors for the pecuniary losses they suffer because of the tortious conduct of others," id. at 231, 734 A.2d 243 (quoting Alexander v. Whitman, 114 F.3d 1392, 1398 (3d Cir.1997)). This distinction makes no difference. A wrongful death action may provide heirs with a remedy resulting from the loss of a life, but the claim still derives from the tortious conduct upon which a personal injury claim would have been based had the victim lived. Id. at 233, 734 A.2d 243; see also Vassiliu v. Daimler Chrysler Corp., 178 N.J. 286, 294, 839 A.2d 863 (2004); Giardina v. Bennett, 111 N.J. 412, 423-24, 545 A.2d 139 (1988).
In considering whether a wrongful death action should have a broader reach than a survival actionor a greater reach than the claim the victim could have asserted had he or she livedwe should not overlook that wrongful death statutes were enacted in response to the English common law rule that "in a civil court, the death of a human being could not be complained *255 of as an injury," Miller v. Estate of Sperling, 166 N.J. 370, 375, 766 A.2d 738 (2001) (quoting Baker v. Bolton, 170 Eng. Rep. 1033 (K.B. 1808)), and to avoid the unjust result, described by one commentator, of making it "cheaper to kill one's victim than to merely injure him or her," Gary A. Meadows, Wrongful Death and the Lost Society of the Unborn, 13 J. Legal Med. 99, 100 (1992) (quoted in Miller, supra, 166 N.J. at 375, 766 A.2d 738). So viewed, it follows that wrongful death statutes were intended to place a claim based on the death of a victim of tortious conduct on the same even plane as a personal injury claim when the victim survives the tortious conduct. The majority, however, concludes that wrongful death actions should be placed on even higher ground, invulnerable to the rigors of N.J.S.A. 39:6A-4.5(a). I find nothing in the policies underlying wrongful death statutes, and the well-established understanding that such claims are derivative of the victim's cause of action, Vassiliu, supra, 178 N.J. at 294, 839 A.2d 863; Smith, supra, 160 N.J. at 233, 734 A.2d 243; Giardina, supra, 111 N.J. at 423-24, 545 A.2d 139, to warrant an exception to N.J.S.A. 39:6A-4.5(a), that would permit an heir to maintain a wrongful death action even though the uninsured victim would not have possessed a cause of action had he or she survived the accident.
The majority's holding seems largely driven by the Court's decision in Miller. There, the Court considered a highly unusual circumstance not applicable here. The record in that case reveals that the plaintiff's wife was treated by a physician from the early 1960's until 1985, during which the physician prescribed a medication later taken off the market due to adverse side effects. 166 N.J. at 372, 766 A.2d 738. The plaintiff's wife died in 1996 without ever having filed a medical malpractice action that had accrued long before. Id. at 372-73, 766 A.2d 738. Plaintiff commenced a wrongful death action within two years of his wife's death and the defendant moved for summary judgment on statute of limitations grounds. Id. at 373, 766 A.2d 738.
We affirmed the summary judgment entered in favor of the defendant. Miller v. Estate of Sperling, 326 N.J.Super. 572, 742 A.2d 572 (App.Div.1999). In so holding, we reasoned that "even though [the wrongful death] claim did not ripen or `accrue' until plaintiff's wife died, decedent's failure to bring a personal injury action before the statute of limitation[s] expired barred the action due to the death claim's derivative nature." Id. at 578, 742 A.2d 572 (internal citations omitted). In reversing, the Supreme Court overruled Knabe v. Hudson Bus Transp. Co., 111 N.J.L. 333, 168 A. 418 (E. & A.1933), and rejected the "unacceptable paradox [that] a wrongful death claim could effectively be time-barred before the death itself." Miller, supra, 166 N.J. at 382, 766 A.2d 738. In so holding, the Court interpreted the scope of N.J.S.A. 2A:31-3, which defines the time for commencement of a wrongful death action, not the scope of N.J.S.A. 2A:31-1, which defines the nature and scope of the claim itself. Thus, in concluding that "the limitations of N.J.S.A. 2A:31-3 do not speak to jurisdictional or procedural matters that might prevent a decedent from instituting an action at death," 166 N.J. at 385, 766 A.2d 738 (emphasis added), the Court was rejecting the anomalous possibility that a wrongful death action could be time-barred before it ever accrued and not recasting the analytical basis for such a claim. Here, we are required to resolve a quite different problem that has no bearing on whether a wrongful death claim can be asserted when the decedent failed in life to pursue an accrued claim.
*256 There is no doubt that because he failed to maintain mandatory auto insurance, Aronberg would not have been able to pursue a claim on his own behalf had he survived the accident. And, because the viability of a wrongful death action is tied to whether the victim would have been entitled "to maintain an action for damages resulting from the injury ... if death had not ensued," N.J.S.A. 2A:31-1, there is nothing in our jurisprudence that would permit a wrongful death action to be maintained when the victim's personal injury action, had the victim survived, would have been barred. Accordingly, the wrongful death action here is only maintainable if the Legislature did not intend to apply N.J.S.A. 39:6A-4.5(a) to wrongful death actions. I can find no evidence of such a legislative intent.
In enacting N.J.S.A. 39:6A-4.5(a), the Legislature intended to address the serious problems and consequences generated by uninsured motorists and "advance[d] a policy of cost containment by ensuring that an injured, uninsured driver does not draw on the pool of accident-victim insurance funds to which he did not contribute." Caviglia v. Royal Tours of Am., 178 N.J. 460, 471, 842 A.2d 125 (2004). The statute, thus, "gives the uninsured driver a very powerful incentive to comply with the compulsory insurance laws: obtain automobile liability insurance coverage or lose the right to maintain a suit for both economic and noneconomic injuries." Ibid. Considering these important goals and finding no evidence of a contrary legislative intent, I would not engraft an exception to N.J.S.A. 39:6A-4.5(a) that would permit the maintenance of a wrongful death action when an action for damages would have been barred had the uninsured motorist lived.
In the final analysis, the majority has determined that we should reach a different conclusion than that which I think is required by the applicable legislation because extinguishing the wrongful death action "would punish family members, rather than the uninsured driver," "add economic woe to the personal loss suffered by family members," and would not likely "enhance the incentive to obtain insurance." I would first suggest that these concerns do not remotely address the goal of cost containment embodied by N.J.S.A. 39:6A-4.5(a). See Caviglia, supra, 178 N.J. at 471, 842 A.2d 125. Any recovery obtained by Aronberg's heir would draw on the insurance pool the Legislature sought to insulate from uninsured motorists. Moreover, there is nothing to suggest that the Legislature did not consider the impact on an uninsured motorist's heirs in enacting N.J.S.A. 39:6A-4.5(a). To the extent that the dismissal of the wrongful death action could be viewed as unduly harsh, the remedyshould there be onelies with the Legislature and should not be imposed through what I believe are the majority's sympathetic interpretations of N.J.S.A. 39:6A-4.5(a) and N.J.S.A. 2A:31-1. Just as it would be anomalous to conclude that a wrongful death action could be time-barred before the death ever occurred, as the Court held in Miller, it would be equally disconcerting to conclude that a wrongful death action could be maintained when a personal injury action arising from the identical circumstances would be barred had Aronberg lived.
For these reasons, I respectfully dissent.
NOTES
[1] Defendants' reliance upon Vassiliu v. Daimler Chrysler Corp., 178 N.J. 286, 294, 839 A.2d 863 (2004), to support this proposition is misplaced. Vassiliu contained language to that effect in considering an entirely different issue, i.e., whether a single policy limit applied to both claims in light of policy language that limited liability "for all damages ... arising out of bodily injury to one person[.]" 178 N.J. at 294, 839 A.2d 863. And, in fact, the Court found no fault in the conclusion that the wrongful death and survivor claims are legally distinct. Ibid.
[2] Damages recoverable under the Wrongful Death Act are expressly limited "to the pecuniary injuries resulting from such death, together with the hospital, medical and funeral expenses incurred for the deceased[.]" N.J.S.A. 2A:31-5. See also Canino v. N.Y. News, Inc., 96 N.J. 189, 194, 475 A.2d 528 (1984); Tenore v. Nu Car Carriers, Inc., 67 N.J. 466, 474, 341 A.2d 613 (1975); Gershon, supra, 368 N.J.Super. at 245, 845 A.2d 720.
[1] Allstate obtained summary judgment in this action on the issue of cancellation.
[2] There is also no dispute that N.J.S.A. 39:6A-4.5(a) precludes Aronberg's estate from seeking relief pursuant to the survival statute, and that the trial judge correctly granted summary judgment on that claim.