25 A.3d 1121

SHEILA ARONBERG, AS GENERAL ADMINISTRATRIX AND ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF LAWRENCE R. ARONBERG, DECEASED, PLAINTIFF–RESPONDENT, v. WENDELL TOLBERT AND FLEETWOOD TAGGART D/B/A FLEETWOOD TRUCKING, DEFENDANTS–APPELLANTS, AND ALLSTATE NEW JERSEY INSURANCE COMPANY, DEFENDANT.

Argued March 14, 2011—Decided August 29, 2011.

*John M. Bowens* argued the cause for appellants (*Schenck, Price, Smith & King,* attorneys, *Mr. Bowens* and *Ryder T. Ulon,* on the brief).

*David E. Maran* argued the cause for respondent (*Maran & Maran,* attorneys).

*Anthony J. Murgatroyd* argued the cause for amicus curiae New Jersey State Bar Association (*Richard H. Steen,* President, *Mr. Murgatroyd* and *Mr. Steen,* on the brief).

*Hugh P. Francis* submitted a brief on behalf of amici curiae Insurance Council of New Jersey and Property Casualty Insurers of America (*Francis & Berry,* attorneys).

Justice ALBIN delivered the opinion of the Court.

In this case, a mother brought a survival and wrongful death action on behalf of the estate of her son, an uninsured motorist who was killed by the alleged negligence of another driver. The other driver and his employer (defendants) claimed that the lawsuit was barred by *N.J.S.A.* 39:6A–4.5(a). That statute provides that any person who fails to maintain statutorily required no-fault insurance "shall have no cause of action for recovery of economic or noneconomic loss sustained as a result of an accident while operating an uninsured automobile." *N.J.S.A.* 39:6A–4.5(a).

The trial court held that the statutory bar applied to the survival claim, but not to the wrongful death action. The court found that the Wrongful Death Act, *N.J.S.A.* 2A:31–1 to –6, granted heirs an independent right of recovery, regardless of the decedent's failure to procure insurance. Thus, the court dismissed only the survival claim that would have inured to the benefit of the son's estate. The Appellate Division granted defendants' motion for leave to appeal and in a split decision affirmed. We granted leave to appeal and now reverse.

When an uninsured motorist's cause of action is barred by *N.J.S.A.* 39:6A–4.5(a), an heir has no right of recovery under the Wrongful Death Act. Under the plain language of the Act, the mother in this case can recover in her lawsuit only if her son would have been "entitled ... to maintain an action for damages resulting from the injury" had "death ... not ensued." *N.J.S.A.* 2A:31–1. Because her son, an uninsured motorist, could not have maintained a cause of action had he lived due to the statutory bar

in *N.J.S.A.* 39:6A–4.5(a), his heirs cannot recover under the Wrongful Death Act.

## I.

### A.

On September 15, 2005, Lawrence Aronberg was driving southbound on the New Jersey Turnpike in a Volkswagen Jetta when a tractor trailer careened into the rear of his car, killing him. The truck was operated by Wendell Tolbert and owned by Fleetwood Taggart (Fleetwood Trucking). On the day of the fatal accident, Aronberg, then thirty-four-years old, was an uninsured motorist. Just three weeks earlier, Allstate New Jersey Insurance Company (Allstate) had cancelled the automobile insurance policy issued to Aronberg because of his failure to keep his premiums current.[1]

### B.

On January 19, 2007, plaintiff Sheila Aronberg, as General Administratrix and Administratrix ad Prosequendum of her son's Estate, filed a survivorship and wrongful death action against defendants Tolbert and Fleetwood Trucking. The complaint alleged that Tolbert's negligence in operating the tractor trailer caused her son's death. The survivorship claim demanded damages for the pain and suffering endured by Aronberg before his death and payment of his medical and funeral expenses. The wrongful death claim demanded damages for the loss of Aronberg's "services, society, comfort, guidance and support" to his mother and brother.[2]

---

[1] Aronberg received an "Automobile Policy Cancellation Notice for Non-Payment of Premium" dated August 5, 2005 from Allstate advising him that his automobile insurance policy would be cancelled on August 24 unless, by that date, he was current on his premiums. Allstate claims that Aronberg was not current by that date, and therefore it cancelled his coverage. The propriety of the cancellation is not before us.

[2] The complaint included a count against Allstate, demanding that it make payment under the Personal Injury Protection provisions of Aronberg's automo-

 The Survivor's Act, *N.J.S.A.* 2A:15–3, permits, for the benefit of the decedent's estate, an appointed representative to file any personal cause of action that decedent could have brought had he lived.[3] *Smith v. Whitaker,* 160 *N.J.* 221, 233, 734 *A.2d* 243 (1999). In other words, the survival action preserves "the right of action which the deceased himself would have had[ ] to redress his own injuries." *Alfone v. Sarno,* 87 *N.J.* 99, 108, 432 *A.2d* 857 (1981) (quotation omitted). Because a survival action belongs to the estate, any recovery is subject to the claims of creditors. *Id.* at 107, 432 *A.2d* 857 (citation omitted).

 In contrast, the Wrongful Death Act provides to decedent's heirs a right of recovery for pecuniary damages for their direct losses as a result of their relative's death due to the tortious conduct of another.[4] *Ibid.* Thus, a wrongful death action "compensate[s] survivors for the pecuniary losses they suffer," *Whitaker, supra,* 160 *N.J.* at 231, 734 *A.2d* 243 (quotation omitted), such as loss of services and loss of society, *see N.J.S.A.* 2A:31–5; *see generally Green v. Bittner,* 85 *N.J.* 1, 7–19, 424 *A.2d* 210 (1980) (describing calculation of damages for "pecuniary injuries"). The Act "permits recovery only of a survivor's calculable economic loss." *Whitaker, supra,* 160 *N.J.* at 232, 734 *A.2d* 243. But any such recovery passes directly to the heirs, not through the estate. *Alfone, supra,* 87 *N.J.* at 107–08, 432 *A.2d* 857.

---

bile insurance policy. Plaintiff claimed that her son's "policy was in full force and effect on" the day of the accident.

[3] *N.J.S.A.* 2A:15–3 provides:

In those actions based upon the wrongful act, neglect, or default of another, where death resulted from injuries for which the deceased would have had a cause of action if he had lived, the executor or administrator may recover all reasonable funeral and burial expenses in addition to damages accrued during the lifetime of the deceased.

[4] The eligible class of "survivors" is governed by the laws of intestacy. However, the survivors must have been "dependent on the decedent for support at the time of his death." *Newburgh v. Arrigo,* 88 *N.J.* 529, 540, 443 *A.2d* 1031 (1982) (citing *N.J.S.A.* 2A:31–4).

## C.

In answering the complaint, defendants asserted that both the survivorship and wrongful death claims were barred by *N.J.S.A.* 39:6A–4.5(a) because Aronberg "was operating an uninsured vehicle at the time of the accident." Defendants moved for summary judgment.

The trial court heard argument on the motion and made the following findings. Aronberg allowed his automobile insurance policy to lapse, Allstate cancelled his policy, and on the day of the fatal accident Aronberg was an uninsured motorist. The court dismissed the survivorship claim because Aronberg would have been barred by *N.J.S.A.* 39:6A–4.5(a) from filing a personal injury action. However, the court denied summary judgment on the wrongful death claim. It viewed the survivorship and wrongful death statutes as "two distinct statutes." Relying on *Miller v. Estate of Sperling*, 166 *N.J.* 370, 766 *A.*2d 738 (2001), the court noted that the wrongful death "claim belongs to the deceased's beneficiaries" and that plaintiff could assert the claim even though her son did "not have a viable cause of action." In the "court's mind," *N.J.S.A.* 39:6A–4.5(a) was not intended to "punish the loved ones, survivors, heirs and beneficiaries."

The Appellate Division granted defendants' motion for leave to appeal from the denial of their motion to dismiss the wrongful death action.[5] *Aronberg v. Tolbert*, 413 *N.J.Super.* 562, 567, 997 *A.*2d 246 (App.Div.2010).

## II.

## A.

In a 2–1 decision, the Appellate Division affirmed. *Id.* at 574, 997 *A.*2d 246. The majority concluded that the uninsured-motorist-lawsuit bar in *N.J.S.A.* 39:6A–4.5(a) should apply differently to

[5] Plaintiff did not seek leave to appeal from the dismissal of the survival action.

the Wrongful Death and Survivor Acts because the two Acts serve different purposes. *Id.* at 569–70, 997 *A.*2d 246. The majority determined that it was "reasonable" to bar the survival action, which is intended "to vindicate the claim of the uninsured driver who has died," because *N.J.S.A.* 39:6A–4.5(a) is "designed to punish the decedent uninsured driver." *Id.* at 570, 997 *A.*2d 246. However, it found "nothing in the language of *N.J.S.A.* 39:6A–4.5(a) that supports the conclusion that the Legislature intended to target innocent family members," who are the beneficiaries under the Wrongful Death Act, for the decedent's culpable act of driving while uninsured. *Id.* at 574, 997 *A.*2d 246. From the majority's viewpoint, "the punitive effect of [*N.J.S.A.* 39:6A–4.5(a) ] is limited—both to the person who failed to obtain insurance and to particular circumstances." *Id.* at 571–72, 997 *A.*2d 246.

Like the trial court, the majority relied on *Miller v. Estate of Sperling,* for the proposition "that a wrongful death action can be viable under circumstances in which a survival action is barred." *Id.* at 569, 997 *A.*2d 246. The majority referred briefly to the facts of *Miller*—a case in which an heir was permitted to bring a wrongful death, medical malpractice claim even though the decedent never filed a medical malpractice action within the statute of limitations. *Ibid.* (citing *Miller, supra,* 166 *N.J.* at 382–83, 766 *A.*2d 738). To the majority, the "limiting language" found within our Wrongful Death Act "is designed only 'to prevent recovery for death where the decedent could never *at any time* have maintained an action, as, for example, where there was simply no tortious conduct toward him.'" *Id.* at 572–73, 997 *A.*2d 246 (quoting *Miller, supra,* 166 *N.J.* at 385, 766 *A.*2d 738).

As further support for its conclusion that *N.J.S.A.* 39:6A–4.5(a) does not bar a wrongful death action, the majority cited to the two inherent goals of *N.J.S.A.* 39:6A–4.5(a): "to punish the uninsured driver and to create an incentive to comply with compulsory insurance laws." *Id.* at 573, 997 *A.*2d 246. The majority found

that neither of those goals would be furthered by extending the bar to "innocent family members." *Id.* at 573–74, 997 *A.*2d 246.

In his dissent, Judge Fisher stated that he would reverse "because *N.J.S.A.* 39:6A–4.5(a) unmistakably declares that no cause of action arises when injuries are sustained by a person operating an uninsured vehicle, and the wrongful death statute, *N.J.S.A.* 2A:31–1, links the viability of a wrongful death action to the" decedent's ability to have "maintain[ed] an action for damages" had he not died. *Id.* at 575, 997 *A.*2d 246 (Fisher, J.A.D., dissenting) (internal quotation marks omitted). Judge Fisher did not see why *N.J.S.A.* 39:6A–4.5(a) would bar a survival action but not a wrongful death action. *Id.* at 576–77, 997 *A.*2d 246. He observed: "A wrongful death action may provide heirs with a remedy resulting from the loss of a life, but the claim still derives from the tortious conduct upon which a personal injury claim would have been based had the victim lived." *Id.* at 576, 997 *A.*2d 246. He was unable to discern any legislative policy for giving favored treatment to a wrongful death action over the victim's personal injury claim that could not have been brought had he survived the tortious conduct. *Id.* at 577, 997 *A.*2d 246.

The dissent next distinguished *Miller,* noting that this Court merely rejected the "anomalous possibility that a wrongful death action could be time-barred before it ever accrued"—and the present case presents "a quite different problem." *Id.* at 578, 997 *A.*2d 246. The dissent would not engraft a judicial special exception to *N.J.S.A.* 39:6A–4.5(a) to "permit the maintenance of a wrongful death action when an action for damages would have been barred had the uninsured motorist lived." *Id.* at 579, 997 *A.*2d 246. Judge Fisher concluded that "[t]o the extent that the dismissal of the wrongful death action could be viewed as unduly harsh, the remedy—should there be one—lies with the Legislature." *Ibid.*

## B.

We granted defendants' motion for leave to appeal. *Aronberg v. Tolbert,* 203 *N.J.* 432, 3 *A.*3d 1223 (2010). We also granted the

motions of the New Jersey State Bar Association and the Insurance Council of New Jersey to participate as amici curiae.

The arguments of the parties and amici are arrayed along opposite sides of the divide in the Appellate Division. Plaintiff and amicus State Bar urge this Court to affirm the denial of summary judgment on the wrongful death claim, substantially for the reasons articulated by the Appellate Division. Defendants and amicus Insurance Council ask us to adopt the rationale of the dissent and dismiss the wrongful death action.

### III.

#### A.

The facts in this appeal are essentially undisputed. The issue before us is simply a matter of statutory interpretation. We review the law de novo and owe no deference to the interpretative conclusions reached by the trial court and Appellate Division. *Zabilowicz v. Kelsey*, 200 *N.J.* 507, 512–13, 984 *A.*2d 872 (2009); *see also Manalapan Realty, L.P. v. Twp. Comm.*, 140 *N.J.* 366, 378, 658 *A.*2d 1230 (1995) ("A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference."). When appropriate, it is our task to correct a mistaken interpretation of a statute.

#### B.

This case involves the interplay between *N.J.S.A.* 39:6A–4.5(a), which bars a lawsuit for personal injuries by an uninsured motorist, and the Wrongful Death Act, *N.J.S.A.* 2A:31–1 to –6. Ultimately, we must determine whether the heirs of an uninsured motorist killed in an automobile accident have a rightful claim under the Wrongful Death Act or whether *N.J.S.A.* 39:6A–4.5(a) extinguishes that claim, just as it did the survival action.

Our aim in interpreting a statute is to give effect to the intent of the Legislature. *DiProspero v. Penn*, 183 *N.J.* 477, 492,

874 *A*.2d 1039 (2005). "[G]enerally, the best indicator of that intent is the statutory language." *Ibid.* Words and phrases in a statute must be viewed within "their context" and typically given "their generally accepted meaning." *N.J.S.A.* 1:1–1. When various statutes meet at intersecting points, we construe those statutes in harmony with one another, if possible, striving to give a proper meaning to the whole of an enactment. *Burnett v. Cnty. of Bergen,* 198 *N.J.* 408, 421, 968 *A*.2d 1151 (2009) (citing *Bedford v. Riello,* 195 *N.J.* 210, 224, 948 *A*.2d 1272 (2008)). If the statute's plain language reveals the Legislature's intent, we need proceed no further. *Bosland v. Warnock Dodge, Inc.,* 197 *N.J.* 543, 553, 964 *A*.2d 741 (2009).

Only "if there is ambiguity in the statutory language that leads to more than one plausible interpretation" do we turn to extrinsic evidence, such as "legislative history, committee reports, and contemporaneous construction." *DiProspero, supra,* 183 *N.J.* at 492–93, 874 *A*.2d 1039 (quoting *Cherry Hill Manor Assocs. v. Faugno,* 182 *N.J.* 64, 75, 861 *A*.2d 123 (2004) (internal quotation marks omitted)). We may also turn to extrinsic evidence if a plain reading of the statute would lead to an absurd result. *See Hubbard ex rel. Hubbard v. Reed,* 168 *N.J.* 387, 392–93, 774 *A*.2d 495 (2001).

We begin with the plain language of the two statutes at issue.

## C.

*N.J.S.A.* 39:6A–4.5(a) provides:

> Any person who, at the time of an automobile accident resulting in injuries to that person, is required but fails to maintain medical expense benefits coverage mandated by [*N.J.S.A.* 39:6A–4] shall have no cause of action for recovery of economic or noneconomic loss sustained as a result of an accident while operating an uninsured automobile.

On its face, the statute deprives an uninsured motorist of the right to sue for any loss caused by another, regardless of fault. Thus, if an uninsured motorist, while operating a vehicle, is injured by another driver who runs a red light, the uninsured motorist has no

cause of action under *N.J.S.A.* 39:6A–4.5(a). That harsh result is mandated by the statute. The statute's self-evident purpose is not to immunize a negligent driver from a civil action, but to give the maximum incentive to all motorists to comply with this State's compulsory no-fault insurance laws. *See Caviglia v. Royal Tours of Am.,* 178 *N.J.* 460, 471, 842 *A.*2d 125 (2004) (noting statute represents "a very powerful incentive to comply with the compulsory insurance laws").

 In this case, *N.J.S.A.* 39:6A–4.5(a) must be construed in conjunction with the Wrongful Death Act. That Act provides:

When the death of a person is caused by a wrongful act, neglect or default, such as would, if death had not ensued, have entitled the person injured to maintain an action for damages resulting from the injury, the person who would have been liable in damages for the injury if death had not ensued shall be liable in an action for damages, notwithstanding the death of the person injured and although the death was caused under circumstances amounting in law to a crime.

[*N.J.S.A.* 2A:31–1.]

Accordingly, to support an heir's wrongful death action, there must be a "death . . . caused by a wrongful act . . . such as would, if death had not ensued, have entitled the person injured to maintain an action for damages resulting from the injury." *N.J.S.A.* 2A:31–1. Applying the language of the statute to the facts here, we have Aronberg's death caused by the alleged wrongful act of defendants. However, "if death had not ensued"—that is, had Aronberg lived—he would not have been entitled "to maintain an action for damages resulting from the injury," *N.J.S.A.* 2A:31–1, because, as an uninsured motorist, *N.J.S.A.* 39:6A–4.5(a) would have barred his cause of action. A plain-language reading of the Wrongful Death Act indicates that the heir's cause of action is therefore likewise barred.

We will not end our analysis here because of the split decision in the Appellate Division. The majority asserted that barring the mother's wrongful death action could not possibly comport with the Legislature's intent and would lead to a seemingly absurd result. The majority contended that punishing an innocent mother—who in the ordinary course would be entitled to compensation for her pecuniary loss under the Wrongful Death Act—for the

failure of her son to insure his car is not an outcome intended by the Legislature. The majority also claimed to draw support from our decision in *Miller v. Estate of Sperling* interpreting the Wrongful Death Act.

We will now examine whether our plain reading of the two statutes is contradicted either by extrinsic evidence that gives meaning to those statutes or by *Miller*.

## IV.

*N.J.S.A.* 39:6A–4.5(a) denies an uninsured motorist a personal injury cause of action for economic and noneconomic damages. In New Jersey, "[a]ll owners of motor vehicles registered or principally garaged in [the State] are required to maintain minimum amounts of standard, basic, or special liability insurance coverage for bodily injury, death, and property damage caused by their vehicles." *Caviglia, supra,* 178 *N.J.* at 466, 842 *A.*2d 125 (citing *N.J.S.A.* 39:6B–1). Every such policy must include a form of self-insurance known as personal-injury-protection (PIP) benefits. *Ibid.* PIP benefits provide medical expense coverage for the insured and members of his household in the event they are injured in an accident involving the insured car. *Ibid.* The coverage is guaranteed regardless of who is at fault in causing the accident—therefore, the moniker no-fault insurance. *Ibid.*

In *Caviglia,* we traced the successive amendments to the original No Fault Act as "the Legislature grappled with the intractable problem of the spiraling cost of automobile insurance." *Id.* at 468, 842 *A.*2d 125. "[T]he No Fault Act may have been successful in meeting its first goal of providing speedy recovery of medical costs, lost wages, and other such expenses without making the victim await the outcome of protracted litigation"; however, it "failed to curb increasing insurance costs and to relieve congestion of court calendars." *Id.* at 467–68, 842 *A.*2d 125 (citations and footnote omitted).

One effort at cost containment was the 1984 enactment that denied "an uninsured driver the right to recover medical costs and

lost wages that would have been reimbursable if the driver had PIP coverage." *Id.* at 468–69, 842 *A.*2d 125 (citing *L.* 1983, *c.* 362, § 10). An earlier version of *N.J.S.A.* 39:6A–4.5(a) "did not restrict entirely an injured, uninsured motorist from suing for noneconomic damages, but conditioned that right on his meeting the $1,500 medical-expense threshold." *Id.* at 469, 842 *A.*2d 125 (citing *L.* 1985, *c.* 520, § 14). Then in 1988, in an amendment to *N.J.S.A.* 39:6A–4.5(a), the Legislature further restricted an uninsured motorist's right to recover noneconomic damages by conditioning any recovery to proof that he suffered death or severe bodily injury (the verbal threshold). *Id.* at 470, 842 *A.*2d 125 (citing *L.* 1988, *c.* 119, §§ 4, 6). Finally, in 1997, the Legislature comprehensively amended *N.J.S.A.* 39:6A–4.5(a) by barring any person who suffers injuries "sustained as a result of an accident while operating an uninsured automobile" from having a "cause of action for recovery of economic or noneconomic loss." *L.* 1997, *c.* 151, § 13 (current version at *N.J.S.A.* 39:6A–4.5(a)).

In upholding the constitutionality of *N.J.S.A.* 39:6A–4.5(a) in *Caviglia, supra,* we recognized that the statute advanced two important objectives underlying New Jersey's no-fault automobile insurance laws. 178 *N.J.* at 471, 842 *A.*2d 125. First, it "gives the uninsured driver a very powerful incentive to comply with the compulsory insurance laws: obtain automobile liability insurance coverage or lose the right to maintain a suit for both economic and noneconomic injuries." *Ibid.* Second, it supports the statutory "policy of cost containment by ensuring that an injured, uninsured driver does not draw on the pool of accident-victim insurance funds to which he did not contribute." *Ibid.* Thus, the present version of *N.J.S.A.* 39:6A–4.5(a) is animated by deterrence and cost-containment rationales. *Id.* at 474, 842 *A.*2d 125.

*N.J.S.A.* 39:6A–4.5(a) is a very blunt tool in coercing compliance with our mandatory insurance laws. As noted earlier, an uninsured motorist driving with the greatest of care who is struck by a reckless or drunk driver will have no basis for seeking relief from the culpable party. Some may think that such a result

is too draconian and not necessary to enforce compliance with the No Fault Act. However, "[l]egislatures are empowered to pass laws to meet the pressing social needs of the times, even if those laws seem to others ill-advised." *Caviglia, supra,* 178 *N.J.* at 477, 842 *A.*2d 125. It is not within our province to second guess the policymaking decisions of the Legislature when no constitutional principle is at issue.

Plaintiff concedes that Aronberg would have had no cause of action to recover economic or noneconomic damages if he had lived, regardless of how devastating and disabling the injuries. Even if plaintiff fully depended on her son economically, had her son lived and been deprived of his livelihood, neither he nor she would have had any recourse due to *N.J.S.A.* 39:6A–4.5(a).

We next turn to the impact of *N.J.S.A.* 39:6A–4.5(a) on the Wrongful Death Act.

## V.

### A.

As mentioned earlier, given the clear language of the Wrongful Death Act, the viability of a claim is triggered by a "wrongful act" causing death "such as would, if death had not ensued, have entitled the person injured to maintain an action for damages resulting from the injury." *N.J.S.A.* 2A:31–1. The import of those words has received dueling interpretations by the parties, the amici, and the majority and dissenting opinions in the Appellate Division, with each side claiming that *Miller v. Estate of Sperling,* 166 *N.J.* 370, 766 *A.*2d 738 (2001), supports its viewpoint.

Under the common law, "the death of a human being could not be complained of as an injury." *Miller, supra,* 166 *N.J.* at 375, 766 *A.*2d 738 (internal quotation marks omitted) (quoting *Baker v. Bolton,* 170 *Eng. Rep.* 1033 (K.B.1808)). If the victim died, his right to bring a cause of action against the tortfeasor died with him, giving rise to the saying that "it was cheaper to kill one's victim than to merely injure him." *Ibid.* (quotation omitted). The

Wrongful Death Act discarded this "illogical result" and remnant of our early common law. *Ibid.* (citation omitted). The evident intention of the Wrongful Death Act was to place families who lost a close family relative—because of the acts of a tortfeasor—in no worse position economically than if the relative had lived. *Id.* at 375–76, 766 *A.*2d 738.

The above quoted language of the Act reveals the drafter's intent to bring parity both to claims by a victim who lives and to claims by his survivors if he dies. The statutory language does not suggest that a claim that a victim cannot bring in life can only spring forth in the event of his death. Indeed, *N.J.S.A.* 2A:31–1 gives the right of an heir "to maintain an action for damages" only if a claim could have been brought by the decedent had he lived. In this case, Aronberg, as an uninsured driver, could not have brought a claim against the alleged tortfeasor as a consequence of the statutory bar. *See N.J.S.A.* 39:6A–4.5(a). His heirs do not have any greater right than Aronberg possessed himself.

Significantly, plaintiff does not challenge the application of *N.J.S.A.* 39:6A–4.5(a)'s bar to a survival action under *N.J.S.A.* 2A:15–3. Yet the pertinent language of the Survivor's Act and the Wrongful Death Act are quite similar. Under the Survivor's Act, a claim may be pursued by the decedent's estate if there was a "wrongful act . . . where death resulted from injuries for which the deceased would have had a cause of action if he had lived." *N.J.S.A.* 2A:15–3. In light of this statutory language, it would be anomalous to apply the uninsured-motorist bar to a survivor's action but not a wrongful death action. Just as the estate in a survivor's action has no better claim than Aronberg had in life, so too Aronberg's mother in a wrongful death action possesses no better claim than her son had he lived.

Nothing in *Miller v. Estate of Sperling* contradicts this straight-forward result.

### B.

In *Miller*, the plaintiff brought a wrongful death, medical mal-practice action against the physician who treated his wife more

than a decade earlier. *Miller, supra,* 166 *N.J.* at 372, 766 *A.*2d 738. The wife never filed a medical malpractice action, and by the time of her death she could not have brought suit because the statute-of-limitations period had long since expired. *Id.* at 372–74, 766 *A.*2d 738. The plaintiff-husband, however, brought the wrongful death action within the two-year period permitted by the Wrongful Death Act. *Id.* at 373, 766 *A.*2d 738; *see N.J.S.A.* 2A:31–3 ("Every action brought under [the Wrongful Death Act] shall be commenced within 2 years after the death of the decedent, and not thereafter.").

The issue in *Miller* was whether "a wrongful death claim could effectively be time-barred before the death itself." *Id.* at 382, 766 *A.*2d 738. We construed the Act to avoid that absurd result, and found that a wrongful death action accrues at the time of the death of the injured party. *Id.* at 382–83, 766 *A.*2d 738. We merely concluded that the wife's "failure to file an action in her lifetime [did] not bar the death action" and that her husband's wrongful death claim was independent of her claim for malpractice. *Id.* at 387, 766 *A.*2d 738. We made clear, however, that the Wrongful Death Act "is designed 'to prevent recovery for death where the decedent could never at any time have maintained an action, as, for example, where there was simply no tortious conduct toward him.'" *Id.* at 385, 766 *A.*2d 738 (quoting W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser & Keeton on the Law of Torts* § 127, at 954 (5th ed.1984)).

In *Miller,* the wife could have maintained a malpractice action in her lifetime had she filed one within the statute of limitations. She had a viable claim; she just did not pursue it. Therefore, her husband was not barred from filing a wrongful death action within the permissible limitations period. In contrast, because Aronberg was an uninsured driver, he could never have maintained an action against the alleged tortfeasor who caused his injuries. Unlike the wife in *Miller,* Aronberg did not ever have a viable claim. Therefore, under the plain language of *N.J.S.A.* 2A:31–1, Aronberg's mother likewise has no right to maintain a wrongful death action.

*Miller's* facts lead to a simple, logical conclusion based on rendering meaningful the Wrongful Death Act's statute of limitations.

## VI.

The plain language of *N.J.S.A.* 39:6A–4.5(a) and *N.J.S.A.* 2A:31–1, when read together and in harmony with each other, lead to the ineluctable result that Aronberg's mother cannot proceed with an action based on the wrongful death of her son because her son, based on his uninsured status, could not have maintained an action against the alleged tortfeasor. Stated more precisely, because Aronberg "fail[ed] to maintain medical expense benefits coverage mandated by" *N.J.S.A.* 39:6A–4, he had "no cause of action for recovery of economic or noneconomic loss sustained as a result of [his] accident while operating an uninsured automobile." *See N.J.S.A.* 39:6A–4.5(a). Because Aronberg could not have "maintain[ed] an action for damages resulting from the injury" had death "not ensued," *see N.J.S.A.* 2A:31–1, his mother consequently has no ground for filing a wrongful death action. Nothing in the legislative history or objectives of either *N.J.S.A.* 39:6A–4.5(a) or *N.J.S.A.* 2A:31–1, or our decision in *Miller*, suggests an outcome different from the one compelled by the unambiguous language of the statutes themselves.

*N.J.S.A.* 39:6A–4.5(a) places a strong incentive on motorists to purchase automobile insurance not only to protect themselves, but their family members as well. Perhaps the desire to protect a loved one is at least as great as the impulse to protect oneself. The plain language of *N.J.S.A.* 39:6A–4.5(a), as applied to the Wrongful Death Act, furthers the Legislature's purpose of coercing compliance with our automobile insurance laws.

The Legislature has determined that *N.J.S.A.* 39:6A–4.5(a)'s lawsuit bar applies to the decedent's next of kin in a wrongful death action. We cannot ignore the relevant statutory language to reach a more sympathetic result for plaintiff.

## VII.

For the reasons expressed, we reverse the Appellate Division, which affirmed the trial court's decision not to grant defendants' motion for summary judgment on the wrongful death claim. Accordingly, this matter is remanded to the trial court for the entry of an order dismissing plaintiff's wrongful death action.

*For reversal and remandment*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, RIVERA–SOTO and HOENS—6.

*Opposed*—None.