# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0879-23

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

N.M.,

     Defendant,

and

W.P.,

     Defendant-Appellant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF N.P.,
a minor.

_____

Argued November 6, 2024 – Decided December 5, 2024

Before Judges Susswein and Bergman.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Somerset County, Docket No. FG-18-0103-22.

Deric D. Wu, Designated Counsel, argued the cause for appellant (Jennifer Nicole Sellitti, Public Defender, attorney; Deric D. Wu, on the briefs).

Wesley G. Hanna II, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Donna Arons, Assistant Attorney General, of counsel; Wesley G. Hanna II, on the brief).

Melissa R. Vance, Assistant Deputy Public Defender, argued the caused for minor (Jennifer Nicole Sellitti, Public Defender, Law Guardian, attorney; Meredith Alexis Pollock, Deputy Public Defender, of counsel; Melissa R. Vance, of counsel and on the brief).

PER CURIAM

Defendant W.P.[1] appeals from a November 2, 2023 Family Part order issued by Judge Bernadette DeCastro, terminating defendant's parental rights to his son, N.P., who was born in May 2014.[2] The child's Law Guardian supports the termination. After hearing testimony from defendant, multiple experts, therapists, and numerous Division of Child Protection and Permanency

---

[1] We use initials to protect the parties' privacy and preserve the confidentiality of these proceedings. R. 1:38-3(d)(17).

[2] The child's biological mother, N.M., surrendered her rights to the resource parent, J.K., and is not a party to this appeal.

(Division) caseworkers, Judge DeCastro issued a sixty-three-page written decision. Defendant contends the Division failed to prove by clear and convincing evidence the four prongs of the best-interests-of-the-child statutory test set forth in N.J.S.A. 30:4C-15.1(a). After carefully reviewing the record in light of the parties' arguments and governing legal principles, we affirm substantially for the reasons set forth in Judge DeCastro's thorough and well-reasoned written opinion.

## I.

The long history of the Division's involvement with this family is thoroughly recounted in the trial judge's opinion and need not be repeated here. It bears emphasis at the outset that the record shows defendant loves his son and more than once has had positive interactions with him. As made clear at oral argument before us, the gravamen of defendant's argument on appeal is that while his interactions with Division caseworkers have been, to put it gently, acrimonious, his relationship with N.P. has been positive. Stated another way, defendant argues his hostility has been directed to Division workers, not the child. However, the Division sought to terminate defendant's parental rights principally due to concerns regarding his untreated mental illness and history of substance abuse. The trial judge likewise emphasized the risk of harm to N.P.

A-0879-23

arising from defendant's mental illness, but also relied on defendant's inconsistency in N.P.'s life, the child's bond with the resource parent, J.K., and child's need for permanency.

On January 25, 2022, the trial court issued a Permanency Order approving the Division's plan for termination of parental rights followed by J.K.'s adoption of N.P. On April 27, 2022, that litigation was terminated and the Division filed for guardianship. The Guardianship trial was convened in September and October 2023 over the course of nine days.

The trial judge heard testimony from multiple expert witnesses: Dr. Jonthan H. Mack, a neuropsychologist who testified on behalf of the Division, Dr. Francis Guenther, Ph.D., a licensed psychologist who also testified on behalf of the Division; Dr. Alison Strasser-Winston, Ph.D., a licensed psychologist who testified for the Law Guardian; and Dr. Jonathan Wall, Psy.D., a licensed psychologist who testified on defendant's behalf. The Division also presented testimony from Melissa Von Der Heide, the licensed marriage and family therapist who oversaw therapy sessions with N.P., and N.P.'s therapist, Dr. Lisa Marcellino. The Division also elicited testimony from J.K., Somerville Police Officer Kyle Jordan, and eight Division caseworkers.

4

Defendant testified on his own behalf and presented testimony from Dr. Wall, his expert; Larissa Graham, a case manager at the Veterans Affairs Community Hopes Program; and Natacha Riley, the therapist who conducted supervised visits.

In her comprehensive written opinion, Judge DeCastro summarized the relevant history and noted at the outset that N.P. was "extremely fragile" and had an inconsistent relationship with his father—one that Dr. Strasser-Winston described as "insecure."  The judge methodically discussed the four prongs of the best interest test, noting "the main issue of contention in this case is to what extent does [W.P.]'s mental illness place his son at risk of harm."  Judge DeCastro concluded the Division proved by clear and convincing evidence that termination of defendant's parental rights was in N.P.'s best interest.  She added that there is no path to reunification, finding defendant "continues to believe there is a large conspiracy of individuals who are against him [that] would place a child at risk for harm, if he were to act on his fears."

With respect to the first prong of the best-interests test, Judge DeCastro found that defendant exposed N.P. to a substantial risk of harm through his untreated mental illness, unchecked hostility, and an inability to regulate his anger.  She recognized that defendant loves his son and did not intentionally

A-0879-23

harm him, but noted the absence of physical abuse/neglect is not conclusive on the issue of harm. The judge credited Dr. Strasser-Winston's testimony that reunification would seriously harm N.P. because defendant is "deeply invested in his delusions" and "that is not going to change in the foreseeable future." The judge added that Dr. Mack's description of N.P. "spiraling into despair while he waited for his father to show up for the bonding evaluation" was "powerful" proof that N.P. has already suffered harm.

Judge DeCastro commented that the first and second prongs of the best-interests test are interrelated. She emphasized that all the experts, including defendant's expert, Dr. Wall, agreed that defendant is unable to parent his son now or in the foreseeable future. The judge found Dr. Mack's and Dr. Strasser-Winston's expert opinions especially persuasive. The judge explained "Dr. Mack found that while [W.P.]'s cognitive profile does not alone preclude him from parenting N.P., his failure to provide consistent support and contact with his son is detrimental." His "irritability," "anger," "paranoia," "distrust," and "delusion[s]"—as described by the various experts and accepted by Judge DeCastro—indicate that it is unlikely W.P. can now or in the near future eliminate the harm caused to N.P. Judge DeCastro also reasoned that while N.P. has "significant developmental issues," defendant maintains his son does not

6

have any problems other than not being with him. Thus, Judge DeCastro concluded that continued contact would present a risk of further emotional harm.

As to the third prong, Judge DeCastro found the Division's numerous referrals demonstrated it undertook comprehensive reasonable efforts that were tailored to defendant's specific needs. Yet he consistently refused to participate and even refused to sign releases for the Veterans Administration services he claimed he attended. The judge also cited defendant's inconsistency with therapeutic visitation and its suspension. The judge further found the Division's efforts to explore other relatives and J.K.'s "informed, unconditional, and unequivocal" decision to adopt satisfied the second part of the third prong.

For the final prong, Judge DeCastro credited Dr. Strasser-Winston's testimony that J.K. is N.P.'s psychological parent and that J.K. can mitigate any harm that would occur from terminating defendant's parental rights. The judge noted defendant has a "distorted view of what is in his son's best interest," explaining that defendant sincerely believes the Division has "an agenda" to keep his son away from him and that all the experts, including his own, are wrong about him.

This appeal followed. Defendant raises the following contentions for our consideration:

A-0879-23

POINT I

THERE WAS NOT SUFFICIENT EVIDENCE,
BASED ON THE LIMITED CONTACT W.P. WAS
PERMITTED TO HAVE WITH HIS SON, THAT
INDICATED HE EITHER COMMITTED ACTUAL
HARM OR WAS A RISK OF HARM TO HIS SON.

POINT II

W.P.'S PARENTAL RIGHTS SHOULD NOT BE
TERMINATED BECAUSE N.P.'S LONG TERM
CARE IN J.K.'S HOME WAS A DECISION BASED
ON A BETTER INTERESTS ANALYSIS.

Defendant raises the following additional contentions in his reply brief:

POINT I

DCPP'S INVOLVEMENT WITH W.P.'S FAMILY
WAS UNNECESSARY AND HARMFUL.

POINT II

THE ENVIRONMENT IN J.K.'S HOME SHOULD
HAVE BEEN A CENTRAL CONSIDERATION IN
THE COURT'S PRONG FOUR ANALYSIS.

II.

We begin our analysis by acknowledging the legal principles governing this appeal, starting with a recognition that an appellate court's review of a Family Part judge's factual findings in a guardianship trial is limited. In re Guardianship of J.N.H., 172 N.J. 440, 472 (2002). Those findings are "binding on appeal when supported by adequate, substantial, credible evidence." Cesare

v. Cesare, 154 N.J. 394, 412 (1998) (citing Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974)). The court may reverse a factual finding only if there is "'a denial of justice' because the family court's 'conclusions are [ ] "clearly mistaken" or "wide of the mark."'" Parish v. Parish, 412 N.J. Super. 39, 48 (App. Div. 2010) (alteration in original) (quoting N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008)); see also Cesare, 154 N.J. at 412 (holding that an appellate court should not disturb the trial court's factual findings unless they are "so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice") (quoting Rova Farms Resort, Inc., 65 N.J. at 484).

"[T]he conclusions that logically flow from those findings of fact are, likewise, entitled to deferential consideration upon appellate review." N.J. Div. of Youth & Fam. Servs. v. R.L., 388 N.J. Super. 81, 89 (App. Div. 2006). However, the "interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). "Whether the facts found by the trial court are sufficient to satisfy the applicable legal standard is a question of law subject to plenary review on appeal." State v. Cleveland, 371 N.J. Super. 286, 295 (App. Div. 2004); see also N.J. Div. of

Child Prot. & Perm. v. A.B., 231 N.J. 354, 369 (2017) ("[W]e review the judge's legal conclusions de novo.").  In addition, no appellate deference is owed to a trial court's interpretation of a statute.  Maeker v. Ross, 219 N.J. 565, 574 (2014) (citing Aronberg v. Tolbert, 207 N.J. 587, 597 (2011)); see also N.J. Div. of Child Prot. & Perm. v. Y.N., 220 N.J. 165, 177 (2014) ("[W]e need not defer to the Appellate Division's or trial court's interpretive conclusions.").

Turning to substantive legal principles, a parent has a constitutional right to raise their child, which "is among the most fundamental of all rights." N.J. Div. of Youth & Fam. Servs. v. F.M., 211 N.J. 420, 447 (2012) (citing E.P., 196 N.J. 88, 102 (2008)).  Importantly, however, that right is not absolute.  N.J. Div. of Youth & Fam. Servs. v. R.G., 217 N.J. 527, 553 (2014).  At times, a parent's interest must yield to the State's obligation to protect children from harm.  N.J. Div. of Youth & Fam. Servs. v. G.M., 198 N.J. 382, 397 (2009).

To effectuate that obligation, the Legislature created a multi-part test to determine when it is in the child's best interest to terminate parental rights. Specifically, N.J.S.A. 30:4C-15.1(a) requires the Division to prove four prongs by clear and convincing evidence.  They are:

> (1) The child's safety, health, or development has been or will continue to be endangered by the parental relationship;

(2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm;

(3) The Division has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and

(4) Termination of parental rights will not do more harm than good.

[N.J.S.A. 30:4C-15.1(a).]

The four prongs "are not discrete and separate; they relate to and overlap with one another to provide a comprehensive standard that identifies a child's best interests." In re Guardianship of K.H.O., 161 N.J. 337, 348 (1999).

A court may not make presumptions against parents in termination of parental rights cases; rather, all doubts that arise "must be resolved against termination of rights." K.H.O., 161 N.J. at 347. The considerations involved in determinations of parental fitness are 'extremely fact sensitive' and require particularized evidence that addresses the specific circumstances in the given case." Ibid. (quoting In re Adoption of Child. by L.A.S., 134 N.J. 127, 139 (1993), superseded by statute on other grounds, N.J.S.A. 9:3-46(a)).

The trial court must consider "not only whether the parent is fit, but also whether he or she can become fit within time to assume the parental role

11

necessary to meet the child's needs." R.L., 388 N.J. Super. at 87 (citing In re Guardianship of J.C., 129 N.J. 1, 10 (1992), superseded by statute on other grounds, N.J.S.A. 9:3-46(a)). A trial court must pay careful attention to a child's need for permanency and stability without undue delay. In re Guardianship of D.M.H., 161 N.J. 365, 385-86 (1999).

## III.

We first address defendant's contention that "the record does not contain sufficient evidence to hold W.P. culpable for harming his son." He emphasizes that (1) he had no history of involvement with the Division, (2) he engaged in substance abuse treatment and counseling, (3) he played a "critical role" in helping N.M. stay sober, (4) his outburst[3] in April 2021 was "understandable" given his contact with N.P. was severely limited while J.K.'s contact was not, and (5) N.P. was generally very happy with him on multiple occasions, such as when N.P. was in his care from February to November 2020, at the December 2020 visit, and at the March 2021 evaluations with Dr. Strasser-Winston.

While defendant acknowledges the Division does not need to wait until the child is irreparably harmed before intervening, he nonetheless contends

---

[3] During this outburst, defendant spoke about car bombing the Division's building.

"keeping N.P. from his father was a harmful and unnecessary step." See D.M.H., 161 N.J. at 383. He also stresses that "regardless of [his] attitude, the standard for removal is not whether the parents of a child are pleasant or cooperative."

We see no abuse of discretion with regards to the judge's findings on prongs one and two. To satisfy the first prong of the best interests test, there must be evidence that the parent caused the child harm. While one single harm may be sufficient, "the focus is on the effect of harms arising from the parent-child relationship over time on the child's health and development." K.H.O., 161 N.J. at 348. Importantly, prong one does not require actual harm; the risk of harm is sufficient. D.M.H., 161 N.J. at 383.

Prong two requires there be parental unfitness, which can "be demonstrated that the parent is 'unwilling or unable to eliminate the harm' that has endangered the child's health and development" or "if the parent has failed to provide a 'safe and stable home for the child' and a 'delay in permanent placement' will further harm the child." K.H.O., 161 N.J. at 352 (citing N.J.S.A. 30:4C-15.1(a)(2)). While prongs one and two are separate inquiries, they are related and "evidence that supports one informs and may support the other as part of the comprehensive basis for determining the best interests of the child."

D.M.H., 161 N.J. at 379. In this matter, the trial court noted prongs one and two were interrelated.

Judge DeCastro found that defendant exposed N.P. to a substantial risk of harm through his untreated mental illness, unregulated hostility, and an inability to regulate his anger. Defendant consistently refused to engage in services and could not be found on multiple occasions. In September 2022, defendant was referred to the Center for Family Services for parenting skills, but did not attend. From October 2022 to the start of termination of his rights in September 2023, defendant did not use the Division's services. He also did not submit drug screens when called and failed to comply with hair follicle testing.

The judge's findings are amply supported by the opinion testimony of four experts that defendant is unable to provide a safe home for N.P. Dr. Guenther testified that defendant put his own needs before N.P.'s and lacked understanding of normal child development. Dr. Guenther also testified that on the Adult-Adolescent Parenting Inventory, defendant scored as high risk in appropriate expectations and medium risk in parental empathy. Similarly, Dr. Strasser-Winston opined that defendant was not capable of parenting and that N.P. needed permanency immediately to prevent further psychological harm.

Dr. Mack opined that defendant's failure to provide consistent support and contact with N.P. would cause harm.

In sum, there was ample evidence, including expert testimony, to support Judge DeCastro's finding that N.P.'s development would be endangered, considering the child's health issues and defendant's resistance to treating them. We have no basis to conclude the judge abused discretion in finding that defendant's temper and paranoia would likely inhibit his ability to follow the court's directions and properly treat N.P.

IV.

We next address defendant's contention the judge erred with respect to prong four of the best-interests test.[4] The crux of defendant's argument is that his son was not with him for most of his life and that was "entirely a situation of [the Division]'s making."

Under the fourth prong of the statutory test, the Division must prove by clear and convincing evidence that "[t]ermination of parental rights will not do more harm than good." N.J.S.A. 30:4C-15.1(a)(4). Termination of parental rights inherently involves harm, but the inquiry focuses on "whether, after

---

[4] Defendant does not challenge the trial judge's findings under the third prong of the best-interests test.

considering and balancing the two relationships, the child will suffer a greater harm from the termination of ties with [their] natural parents than from the permanent disruption of [their] relationship with [their] foster parents." K.H.O., 161 N.J. at 355.

The law is well-settled that "[t]o satisfy the fourth prong, the State should offer testimony of a well qualified expert who has had full opportunity to make a comprehensive, objective, and informed evaluation of the child's relationship with both the natural parents and the foster parents." F.M., 211 N.J. at 453 (quoting N.J. Div. of Youth & Fam. Servs. v. M.M., 189 N.J. 261, 281 (2007)). "The crux of the fourth statutory subpart is the child's need for a permanent and stable home, along with a defined parent-child relationship." N.J. Div. of Youth & Fam. Servs. v. H.R., 431 N.J. Super. 212, 226 (App. Div. 2013).

We add that an appellate court owes substantial deference to a Family Part judge's assessment of the credibility and weight to be accorded expert testimony. See R.G., 217 N.J. at 552; DMH, 161 N.J. at 382 ("[W]e rely on the trial court's acceptance of the credibility of the expert's testimony and the court's fact-findings based thereon, noting that the trial court is better positioned to evaluate the witness' credibility, qualifications, and the weight to be accorded her testimony.").

In this instance, Judge DeCastro's findings with respect to prong four are "supported by adequate, substantial, credible evidence." Cesare, 154 N.J. at 412. The judge found the fourth prong was satisfied based on experts who made comprehensive, objective, and informed evaluation of the child's relationship with both defendant and J.K. The trial judge explained, for example, that Dr. Mack and Dr. Strasser-Winston, who both observed N.P. with the resource mother, noted the child has a secure attachment and parent-child bond with J.K.

As we have noted, Dr. Strasser-Winston opined that J.K. had become a psychological parent and that their relationship would mitigate any harm which might occur from terminating defendant's parental rights. Dr. Strasser-Winston acknowledged that N.P. was comfortable and relaxed around his father and greeted him "with a warm hug and kiss" despite not having any in-person contact with W.P. since April 2021. Dr. Strasser-Winston nonetheless ultimately opined that their bond was insecure. We see no abuse of discretion in the judge's reliance on this expert testimony.

Judge DeCastro also relied on Dr. Mack's expert opinion which concluded that N.P. "appears attached to [J.K.'s] family" and "removal would likely result in psychological distress" notwithstanding that her home "is not void of concern" and "the household's safety appears to be significantly in question."

A-0879-23

Importantly for purposes of our analysis, Judge DeCastro carefully considered the testimony from defendant's expert, Dr. Wall, who was the only expert in this case to opine that termination would cause more harm than good. The judge found this testimony was unpersuasive, reasoning:

> [Dr. Wall] fails to consider that the child views his resource mother as the best placement for him as J.K. has his best interest in mind. He wishes to be adopted by her. That is his home. He shares a secure attachment with her and receives the stability, consistency and care he needs. The very nature of the relationship with the resource parent and the fact that N.P. has spent most of his life in her care is what mitigates any harm from terminating his father's parental rights.

We add that Dr. Wall's conclusion depends on defendant's future compliance with the Division, seeking treatment for his mental health issues, and addressing N.P.'s medical needs. Dr. Wall testified in this regard:

> I could see that what I'm asking is a tall order of the Court and of the Division, much taller than I expected because of the challenges which I wasn't afforded the opportunity to know about ahead of time. But, nonetheless, based on the research, I do feel that it might take [W.P.] a period of time before people who work with him . . . can support him in meeting with the child. He would have to certainly address the substance abuse issues that he still hasn't addressed. He would certainly have to follow through with medication compliance. He would have to remain in treatments, whatever is recommended in the future. He'd have to remain in a stable home. . . . [T]hat's going to take a period of time. And if he doesn't conduct himself in a

18

way which . . . should he be availed of an opportunity to meet with his son and doesn't focus on the present . . . and the positive, but instead puts the child in a difficult situation, then he needs to go back to the drawing board. And it might be another extended period of therapy and intervention, and of course it—also working in conjunction with the child's therapists, when they feel it's appropriate, and caregivers—for him to be availed of another visit. So, . . . it's not necessarily I'm advocating that he has frequent parenting opportunities with his child if he is not fully complying with the contract that he would be making with the other caregivers. . . . [I]t's a big ask of him.

In view of defendant's long history of failing to comply with Division services, we find no fault in the judge's determination not to accredit Dr. Wall's hopeful opinion as it relates to the fourth prong of the best-interests test.

To the extent we have not specifically addressed any of defendant's contentions, it is because they lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0879-23